UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

PERU MCCARRA,

                                        Plaintiff,

v.                                                      1:25-cv-00501 (EEC/TWD)

CHRISTOPHER P. FLINT, et al.,

                                        Defendant.

───────────────────────────────────

APPEARANCES:

PERU MCCARRA
*Plaintiff*, *pro se*
20 Danker Avenue
Albany, NY 12206

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION AND ORDER</u>

## I.    INTRODUCTION

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Peru McCarra ("Plaintiff").  Dkt. No. 1.  Plaintiff has not paid the filing fee for the action and seeks leave to proceed *in forma pauperis* ("IFP").  Dkt. No. 2.  Plaintiff has also filed a letter motion for sanctions.  Dkt. No. 7.  For the reasons stated below, the undersigned grants the IFP application, recommends dismissal of the complaint with leave to amend, and denies the motion for sanctions without prejudice as moot.

## II.    IFP APPLICATION

Upon review, Plaintiff's IFP application demonstrates economic need.  *See* Dkt. No. 2. Therefore, Plaintiff's IFP application is granted.

III.    **COMPLAINT**

Plaintiff commenced the instant action utilizing the Court's form civil rights complaint pursuant to 28 U.S.C. § 1983.  Dkt. No. 1.[1]  The complaint lists eights defendants: Christopher P. Flint, Susan Dube, Josh Kullman, Kevin Schwebke, Aaron St. Gelais, Ryan St. Gelais, Michael Case,[2] and the Menands Police Department (together "Defendants").  *Id.* at 1-2.  The factual allegations in the complaint are brief:

> On Feb 12, 2025, Christopher P. Flint, Josh Kullman, Aaron St Gelais, Ryan St Gelais, Menands Police Department, Kevin Schwebke, including Susan Dube committed unlawful arrest without probable cause/warrant.  Christopher P. Flint/etc continued to send me to jail without probable cause, no formal or valid charge, refused to provide court transcripts, and continues to use police in court room to intimidate and coerce intimidation when I practice my constitutional rights.

*Id.* at 2.

Under the "First Cause of Action," Plaintiff lists: "1983 Deprivation of rights violation of Forth Amendment unlawful search/seizure, unlawful arrest, sending to jail w/o probable cause/warrant."  *Id.* at 3.  Under the "Second Cause of Action," Plaintiff states, "assault in third degree."  *Id.*  Under the "Third Cause of Action," Plaintiff states "Menands Courthouse under fraudulent status invalid courthouse jurisdiction, as well as Christoper P. Flint (former lawyer number: 2047009) non-lawyer 'judge' under fraudulent status because judge registration is i[n]valid/not updated therefor he has no jurisdiction to be handling cases under the law."  *Id.*

---

[1] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[2] Michael Case is identified as a defendant in the caption but not in the body of the complaint. Dkt. No. 1 at 1-2.  The Clerk is directed to update the docket and add "Michael Case" as a defendant.

As relief, Plaintiff asks the Court to "produce sanctions/pay plaintiff for reasonable compensation." *Id*. at 4. Plaintiff attaches 24 additional pages to the form complaint consisting of copies of photographs, online news articles, webpages, a State court pleading, and Village of Menands documents. *Id*. at 5-28.

## IV.    STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). "But the 'special solicitude' in *pro se* cases has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief." *Bey v. Officer Carrillo, et al.*, No. 25-CV-2099, 2025 WL 1644044, at *1 (S.D.N.Y. June 10, 2025) (internal citation omitted) (citing Fed. R. Civ. P. 8(a)).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (holding that "finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is

'frivolous' when either: (1) the factual contentions are clearly baseless . . .; or (2) the claim is based on an indisputably meritless legal theory.") (internal quotation marks and citation omitted).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id*.  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

## V.    ANALYSIS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (internal quotations and citations omitted).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). The requirement that a defendant act "under color of state law," means that the typical § 1983 claim is brought against state and local government officials and entities, not against private individuals or entities. Private actors "may only be held liable under § 1983 where the conduct at issue constitutes 'state action' [–] which only occurs where the challenged action of a private party is 'fairly attributable' to the state." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 504 (N.D.N.Y. 2017) (citing *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010)).

A plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). An official may not be held liable for constitutional violations simply because he held a high position of authority. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016).

Upon review, even afforded a liberal construction, the complaint fails to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure and fails to state a claim upon which relief may be granted.

### A.    Deficient Pleading

Rule 8 of the Federal Rules of Civil Procedure requires a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . . " Fed. R. Civ. P. 8(a)(2). "The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*,

189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted).  Therefore, allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Rule 10 of the Federal Rules of Civil Procedure provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances . . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial – must be stated in a separate count or defense."  Fed. R. Civ. P. 10.  Rule 10 serves "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading . . . ."  *Flores*, 189 F.R.D. at 55 (internal quotations and citation omitted).

A complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court.  *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  Such is the care here.

Plaintiff provides no facts or support explaining *how* his constitutional rights were allegedly violated under the Fourth Amendment.  *See Lamothe v. Brown*, 5:22-CV-161 (TJM/CFH), 2023 WL 316013, at *8 (D. Vt. Jan. 19, 2023) ("The lack of factual support, context, or clear statements of the claims and explanations as to how each defendant is personally involved in the alleged violation of each area of law or right asserted renders plaintiff's complaint plainly violative of Rule 8[.]"); *Joseph v. JRF Income Tax Bus. Servs.*, No. 21-CV-3869, 2021 WL 3516421, at *5 (E.D.N.Y. Aug. 10, 2021) ("A complaint that offers

nothing more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation' or that 'tenders naked assertions devoid of further factual enhancement' is insufficient.") (quoting *Iqbal*, 556 U.S. at 678).

As set forth above, Plaintiff alleges violations of his Fourth Amendment rights, but other than the date, he offers no details about when and where the alleged search and seizure took place, the circumstances giving rise to the incident, how each defendant was personally involved, how he conducted himself, or any injuries he sustained. *See* Dkt. No. 1 at 2-3. Plaintiff has not included any details about the arrest, the charge, how long he was in jail, and the disposition or status of the charge.

In sum, the pleading lacks a short and plain statement showing Plaintiff is entitled to relief as well as numbered paragraphs, limited as far as practicable to a single set of circumstances. Therefore, the Court recommends dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and for failure to comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. *See, e.g.*, *Griffith v. New York State*, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *4 (N.D.N.Y. Mar. 20, 2024) (recommending "dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claim or claims against Defendant are entirely unclear"), *report and recommendation adopted*, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024).

### B.    Municipal Liability

Plaintiff names the Menands Police Department as a defendant. Dkt. No. 1 at 2. However, "[a] police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department)

(citations omitted); *see Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) ("Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.") (citations omitted); *see also Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *9 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case."). Because the Menands Police Department is not a proper defendant, the Court recommends terminating the Menands Police Department as a defendant on the docket.

While Plaintiff could sue the municipality – the Village of Menands – rather than one of its "departments," a municipality may only be named as a defendant in certain circumstances. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("Municipalities are considered 'persons' who can be sued under § 1983.").

Pursuant to the standard for establishing municipality liability laid out in *Monell*, in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer."). A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v.*

*Harris*, 489 U.S. 378, 388-89 (1989).  A plaintiff must also establish a causal connection – an affirmative link–between the policy and the deprivation of his constitutional rights.  *City of Oklahoma City*, 471 U.S. at 823.  Importantly, a municipality may not be held liable solely because it employs a tortfeasor.  *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).  Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury.  *Monell*, 436 U.S. at 694; *see Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.").

Here, in addition to the foregoing pleading defects, Plaintiff has not plausibly alleged a *Monell* claim against the Village of Menands.

### C.    Judicial Immunity

Plaintiff appears to assert claims against Christopher P. Flint, a "Non Lawyer judge," for actions related to his position as a judge for the Village of Menands.  *See Id*. at 2-3, 10.[3]  The Second Circuit has held that "absolute immunity is appropriate for judges in the exercise of their judicial function."  *Tulloch v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995) (citing *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967); *Fields v. Soloff*, 920 F.2d 1114, 1119 (2d Cir. 1990)).  Judicial immunity is overcome in only two circumstances: (1) where the actions were not taken in their

---

[3] According to the website maintained by the Village of Menands, the Menands Village Court is responsible for traffic matters, criminal matters, civil matters, environmental conservation matters, local law matters, and small claims actions occurring in the Village of Menands.  The Honorable Christoper P. Flint, Village Justice, presides over Village Court proceedings and Susan Dube is a Senior Court Clerk.  *See* https://menandsny.gov/departments/village-court/ (last visited July 2, 2025).

judicial capacity; and (2) where the actions, though judicial in nature, were taken in complete absence of all jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citing *Forrester v. White*, 484 U.S. 219, 227-29, 356-57 (1988); *Stump v. Sparkman*, 435 U.S. 349, 360 (1978); *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). The immunity afforded to judges also applies to government officials for their acts that assist a judge in the performance of their judicial duties. *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *see also Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988).

The proper analysis for determining whether judicial immunity has been overcome is to address the "nature of the act" rather than the "impropriety of the act" to protect judges from being deprived of immunity simply because they made an error or unintentionally exceeded their authority. *See Mireles*, 502 U.S. at 12-13. The bar to overcome judicial immunity is extremely high. If the nature of the act is "a function normally performed by a judge," the judge is acting within his judicial capacity. *Id*. at 12. Furthermore, "the scope of the judge's jurisdiction must be construed broadly . . . [a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Zeigler v. New York*, 948 F. Supp. 2d 271, 282-83 (N.D.N.Y. 2013) (internal quotation marks omitted) (quoting *Stump*, 435 U.S. at 356); *accord Gross v. Rell*, 585 F.3d 72, 85 (2d Cir. 2009) (holding where there is an issue of judicial immunity, jurisdiction must be construed broadly). Accordingly, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359; *see also Bradley*, 80 U.S. at 357 (holding that even if a judge acts erroneously – which may affect the validity of the exercise of jurisdiction – the error does not make the act any less judicial and the judge is still immune from damages).

Here, Plaintiff asserts claims that appear to arise from the actions of Defendant Flint in his capacity as a judge in the Menands Village Court. *See* Dkt. No. 1 at 1 ("Christopher P. Flint/etc continued to send me to jail without probable cause, no formal or valid charge, refused to provide court transcripts, and continues to use police in court room to intimidate and coerce intimidation when I practice my <u>constitutional rights</u>."). Those actions clearly are the type of conduct covered by judicial immunity. As Plaintiff does not allege any plausible facts showing Defendant Flint did anything to violate his constitutional rights, much less acted beyond the scope of his judicial responsibilities or outside his jurisdiction, Defendant Flint is immune from suit under the doctrine of judicial immunity.[4]

Therefore, the Court also recommends dismissal of the complaint as against Defendant Flint pursuant to 28 U.S.C. § 1915e(2)(B)(iii) and based on the doctrine of judicial immunity.

### D.    Leave to Amend

The Second Circuit has cautioned that a court "should not dismiss a *pro se* complaint without granting leave to amend at least once, unless amendment would be futile." *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (internal quotation marks omitted). Accordingly, the Court recommends granting Plaintiff leave to file an amended complaint.

---

[4] "Judicial immunity has been extended to court clerks and 'others who perform functions closely associated with the judicial process' when they are performing discretionary acts of a judicial nature which are essential to the judicial process, especially the filing of court documents and managing a court's calendar." *Calley v. Town of Cortlandt*, No. 19-CV-5453, 2019 WL 11880434, at *5 (S.D.N.Y. July 8, 2019) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); and citing *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to state court clerks who were ordered by Appellate Division judges not to provide a litigant with documents and not to expand the record on appeal)). Here, Plaintiff does not plead any facts about what Defendant Dube did or did not do that violated his rights. *See generally* Dkt. No. 1. However, she also would likely be immune from suit for actions or inactions related to her performance as Senior Court Clerk.

Plaintiff is advised that any amended complaint, if filed, will supersede and completely replace the original complaint. *See Hancock v. Cnty. of Rensselae*r, 882 F.3d 58, 63 (2d Cir. 2018) (noting "it is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect") (brackets and internal quotation marks omitted).  Any amended complaint must bear the docket number of this action and be labeled as an amended complaint. All defendants should be named in the case caption. *See* Fed. R. Civ. P. 10(a).

An amended complaint must comply with the Federal Rules of Civil Procedure, including setting forth a short and plain statement of each claim as required by Rule 8, in consecutively numbered paragraphs as required by Rule 10, and with Plaintiff's original signature as required by Rule 11.  It must include Plaintiff's factual allegations in their entirety and must set forth the claims he alleges against each defendant, including the dates and times, to his best approximation.  An amended complaint must include details about any ongoing prosecution related to the claims asserted, and if the prosecution has concluded, that any conviction related to the asserted claims has been invalidated.[5]

---

[5] Civil lawsuits may not be used to collaterally attack criminal convictions.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  In *Heck*, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 486-87.  The Supreme Court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id*. at 487 (emphasis in original).  Thus, under *Heck* and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred . . . no matter the target of the prisoner's suit . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original).

## VI.    MOTION FOR SANCTIONS

Plaintiff filed his complaint on April 22, 2025.  Dkt. No. 1.  On April 30, 2025, a letter motion was file on behalf of Defendants requesting an extension of time to answer the complaint.  Dkt. No. 4.  By Text Order entered May 2, 2025, the Court denied the letter motion as unnecessary.  Dkt. No. 5 ("Plaintiff filed a motion for leave to proceed in forma pauperis.  Dkt. No. 2 .  Therefore, the complaint is under review for sufficiency pursuant to 28 USC Section 1915, and no summonses have [ ] been issued such that the matter is not yet ripe for a response from defendants.  Court will issue a decision on the sufficiency of the complaint in due course.").

Later that same day, Plaintiff filed a response to Defendants' letter motion, Dkt. No. 6, and filed a letter motion for sanctions claiming, *inter alia*, counsel "erroneously requested an unreasonable extension" and "FAILED to provide a justification/purpose for the ridiculous extensions request."  Dkt. No. 7.  Plaintiff also complained that although counsel's letter indicated Plaintiff was copied via regular mail, he did not receive a physical copy of the letter.  *See generally* Dkt. No. 7.  By letter dated May 8, 2025, counsel for Defendants responded to Plaintiff's motion for sanctions.  Dkt. No. 8.  As set forth therein, out of an abundance of caution, the letter motion requesting an extension of the answer deadline was filed and due to an inadvertent clerical error, a copy of said letter motion was not physically mailed to Plaintiff.  *Id*.  On May 9, 2025, Plaintiff filed another letter in support of his motion for sanctions, and counsel for Defendants responded on May 12, 2025.  Dkt. Nos. 9, 10.

Having carefully reviewed the submissions, Dkt. Nos. 6, 7, 8, 9, 10, and in light of the above recommendation that Plaintiff's complaint be dismissed, Plaintiff's motion for sanctions is denied without prejudice as moot.

## VII.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application is (Dkt. No. 2) is **GRANTED**;[6] and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**RECOMMENDED** that Plaintiff be **GRANTED LEAVE TO AMEND** to cure the deficiencies identified in this Report-Recommendation; and it is further

**RECOMMENDED** that the Clerk be directed to **TERMINATE** the "Menands Police Department" as a defendant on the docket; and it is further

**ORDERED** that the Clerk update the docket to **ADD** "Michael Case" as a defendant; and it is further

**ORDERED** that Plaintiff's motion for sanctions (Dkt. No. 7) is **DENIED WITHOUT PREJUDICE AS MOOT**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of

---

[6] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[7] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a

the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

**WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

      **IT IS SO ORDERED.**

Dated:  July 2, 2025
        Syracuse, New York

                               Therèse Wiley Dancks
                               United States Magistrate Judge

---

Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2025 WL 1644044
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jeremy Jacob Morales BEY, Plaintiff,

v.

Officer CARRILLO, Badge #973983; Lieutenant
Bautista; NYPD Precinct #020; Department of Motor
Vehicles Traffic Violations Division, Defendants.

25-CV-2099 (KMW)
|
Signed June 10, 2025

**Attorneys and Law Firms**

Jeremy Jacob Morales Bey, New York, NY, Pro Se.

ORDER OF DISMISSAL

KIMBA M. WOOD, United States District Judge:

**\*1** Plaintiff, appearing *pro se*, brings this action invoking the
Court's diversity of citizenship jurisdiction and alleging that
Defendants violated his rights with respect to a traffic ticket.
By order dated April 17, 2025, ECF No. 7, the court granted
Plaintiff's request to proceed *in forma pauperis* ("IFP"), that
is, without prepayment of fees. [1] For the reasons set forth
below, the Court dismisses the complaint.

[1] The IFP application that Plaintiff filed with this
complaint included insufficient information. By
order dated March 21, 2025, Chief Judge Laura
Taylor Swain directed Plaintiff to either pay the
filing fees or submit an amended IFP application.
Plaintiff filed an amended IFP application on
March 28, 2025.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of
the complaint, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss

a complaint when the Court lacks subject matter jurisdiction
of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

Although the law mandates dismissal on any of these grounds,
the Court is obliged to construe *pro se* pleadings liberally,
*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret
them to raise the "strongest [claims] that they *suggest*,"
*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474
(2d Cir. 2006) (per curiam)(internal quotation marks and
citations omitted) (emphasis in original). But the "special
solicitude" courts provide to *pro se* litigants, *id.* at 475
(citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief. Fed. R. Civ. P. 8(a)(2).

A claim is frivolous when it "lacks an arguable basis either
in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324-25
(1989), *abrogated on other grounds by Bell Atl. Corp. v.
Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*,
504 U.S. 25, 32-33 (1992) (holding that "finding of factual
frivolousness is appropriate when the facts alleged rise to the
level of the irrational or the wholly incredible"); *Livingston*,
141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1)
the factual contentions are clearly baseless ...; or (2) the claim
is based on an indisputably meritless legal theory." (internal
quotation marks and citation omitted)).

**BACKGROUND**

Plaintiff brings his claims using the court's general
complaint form. He invokes the Court's diversity of
citizenship jurisdiction, alleging that he is a citizen of the
"Moorish Nation America/Morocco" and providing New
York employment addresses for the Defendants. (ECF 1, at
2, 4.) Plaintiff states that the events giving rise to his claims
occurred on December 27, 2024. (*Id.* at 5.) The following
allegations are drawn from the complaint. [2] While traveling
on West 60th Street, Plaintiff was allegedly detained by
Defendants Bautista and Carrillo. (*Id.*) Plaintiff alleges that
the officers accused Plaintiff of being in violation of "Statute
401(1)A, & 509(1)," [3] statutes which Plaintiff maintains are
a "private policy," rather than laws that can be enforced. (*Id.*)

2    The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

3    Section 401(1)(a) of the New York Vehicle and Traffic Laws requires drivers to register vehicles that are driven on public highways, and Section 509(1) requires drivers in New York to be licensed. *See* N.Y. Veh. & Traf. Law §§ 401(1)(a), 509(1).

**\*2** Plaintiff alleges,

> The Department of Motor Vehicles Traffic Division is an unconstitutional, private corporation, not delegated by Congress, under Article III, Section 2 of the Constitution; and that the officers does not, and did not provide 'Due Process' protected and secured for the People, by the Amendments IV, V, VI, VII, VIII, IX, and X of the United States Constitution to which judges and officers in every state is bound (by official oath) to support & to uphold. Any statutory regulation, ordinances, or law of any State, to the contrary, notwithstanding.

(*Id.* at 6.)

Plaintiff alleges that Defendants,

> commanded that [Plaintiff] pay fines & costs imposed under T.D.C. with a 'man-of-straw'/misnomer word, misrepresented as implying my name, & types upon the order/instrument, & was improperly spelled. That misnomer & corporate-name, is clearly (an artificial person/entity). It is not me, the Natural Person, is a deliberate grammatical error intended for injury to me; and is clearly not of consanguine relationship to me or to my nationality.

(*Id.*)

Plaintiff accuses Defendants of committing fraud, a felony, and "treason." (*Id.*)

Although Plaintiff filed his claims as a civil action, he attaches to the complaint, as Exhibit A, a document labeled

"Legal Notice of Removal from Municipal Court to Federal Court Pursuant to Title 28 § 1441-§ 1446 Proper Article III Jurisdiction." (*Id.* at 8.) That document includes references to "The Treaty of Peace and Friendship of 1836 A.D. Between Morocco and the United States" and various pseudo-legal and pseudo-historical arguments. The document reiterates the facts alleged in the complaint, including Plaintiff's allegation that, by capitalizing his name on a traffic ticket or court documents, Defendants were referring to "an artificial person/entity" and not to Plaintiff. (*Id.* at 10.)

Plaintiff requests that,

> this United States Supreme Court view this Affiant (in my Proper Person) as a Moorish American National (Natural Born Citizen of the Land) and not as a (brand) NEGRO, BLACKMAN (person), COLORED, AFRICAN-AMERICAN, or any other SLAVE TITLE or 'nom de guerre' imposed upon me for misrepresentation 'Actions' or other acts of 'Misprision' that a misdirected society may 'believe' to be true.

(*Id.* at 18.)

Plaintiff further states in that document that he is seeking money damages.

### DISCUSSION

**A. Plaintiff's claims are frivolous**

In his submission, Plaintiff alleges that he cannot be held liable for the traffic violations for which he was arrested because traffic laws are a "private policy," the Department of Motor Vehicles is an "unconstitutional, private corporation," and that, by capitalizing his name on the charging instrument, Defendants were referring to a "man-of-straw" and an "an artificial person/entity," rather than to Plaintiff. (*Id.* at 5.) Plaintiff's claims relate to a common sovereign citizen or "redemptionist" argument that a name in all capital letters refers to a separate legal entity. Proponents of these theories believe that "when a person's name is spelled ... with initial capital letters and small letters, [it] represents the 'real

person' ... [and w]henever a person's name is written in total capitals, ... only [a] 'strawman' is referenced, and the flesh and blood person is not involved." *Santana v. United States*, Nos. 16-CV-5750 (PKC), 13-CR-0536 (PKC), 2017 WL 2470834, at *2 (S.D.N.Y. June 6, 2017) (quotation marks and citation omitted). Courts have explained the underpinning of these ideas:

> **\*3** "Redemptionist" theory ... propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman.

*Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008) (citation omitted). Advocates of such claims tend to "believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. Feb. 14, 2013).

The arguments Plaintiff asserts in the complaint have been consistently rejected by federal courts as without merit and as frivolous. *See, e.g., Bendeck v. U.S. Bank Nat'l Ass'n*, No. 17-CV-0180, 2017 WL 2726692, at *6 (D. Haw. June 23, 2017) (collecting cases that have rejected as meritless or frivolous the argument that "differences in capitalization of a person's name create separate legal entities"); *Harris v. Colombo*, No. 17-CR-0202, 2017 WL 1206262, at *2 (W.D. Mich. Apr. 3, 2017) (dismissing as "patently frivolous" plaintiff's claims that capitalizing his name created a "fictitious legal entity"); *Muhammad v. Smith*, No. 3:13-CV-760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) ("Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as

frivolous and a waste of court resources."). Because Plaintiff's claims are "based on an indisputably meritless legal theory," *Livingston*, 141 F.3d at 437, the Court dismisses this action as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

### B. Removal of Plaintiff's criminal proceedings

To the extent that, by attaching a notice of removal to his complaint, Plaintiff seeks to remove to this court his state court criminal proceedings arising from the traffic violations, his request is denied. To remove a state-court criminal action to a federal district court:

> [a] defendant ... shall file in the district court of the United States for the district and division within which such prosecution is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1455(a). If it appears on the face of a notice of removal that removal of a criminal case is impermissible, the district court must summarily remand the action to state court. 28 U.S.C. § 1455(4).

This notice of removal is improper. Criminal cases that may be removed to federal court include criminal prosecutions commenced in state court against a federal officer or member of the armed forces for actions taken under the color of office. 28 U.S.C. §§ 1442(a), 1442a. Criminal cases commenced in state court also may be removed if the defendant "is denied or cannot enforce in the courts of such State a right under any law

providing for the equal civil rights of citizens of the United States." 28 U.S.C. § 1443(1).

**\*4** Plaintiff does not allege that he is a federal officer or member of the armed forces being prosecuted for actions taken under color of office. He also does not assert any facts showing that he cannot enforce his federal equal rights in his state court criminal proceeding. *See Johnson v. Mississippi,* 421 U.S. 213, 219 (1975) (setting forth two-prong test for removal of criminal prosecution where defendant is denied equal civil rights). "That a [defendant] will be denied due process of law because the criminal law under which he is being prosecuted is allegedly vague or that the prosecution is assertedly a sham, corrupt, or without evidentiary basis does not, standing alone, satisfy the requirements of [section] 1443(1)." *Id.*

The Court therefore concludes that removal is not proper, and remands the action to state court.[4] *See* 28 U.S.C. § 1455(b) (4).

[4]    Nowhere in the complaint or the attached notice of removal does Plaintiff specify the state court in which his criminal proceedings are pending.

## CONCLUSION

The Court dismisses the complaint, filed IFP under 28 U.S.C. § 1915(a)(1), as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

To the extent Plaintiff seeks to remove his state court criminal proceedings to this court, his request is denied as improper, and the case is remanded to the state court.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 1644044

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 20 of 70

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

2023 WL 316013
Only the Westlaw citation is currently available.
United States District Court, D. Vermont.

Jeffrey LAMOTHE, Plaintiff,
v.
Colleen BROWN, Defendant.
Jeffrey Lamothe, Plaintiff,
v.
Bankruptcy Court, et al., Defendants.
Jeffrey Lamothe, Plaintiff,
v.
Bankruptcy Court, et al., Defendants.
Jeffrey Lamothe, Plaintiff,
v.
Heather Cooper, et al., Defendants.

5:22-CV-161 (TJM/CFH), 5:22-CV-162 (TJM/CFH),
5:22-CV-163 (TJM/CFH), 5:22-CV-164 (TJM/CFH)
|
Signed January 19, 2023

**Attorneys and Law Firms**

Jeffrey Lamothe, 17 Potter Ave., Apt. B, Granville, New York
12832, Plaintiff pro se

### REPORT-RECOMMENDATION & ORDER

Christian F. Hummel, United States Magistrate Judge

**\*1** Plaintiff pro se Jeffrey Lamothe commenced 5:22-
CV-161, LaMothe v. Brown, on August 31, 2022, with
the filing of an application for leave to proceed in forma
pauperis ("IFP") (Dkt. No. 1-1), complaint (Dkt. No. 1-2)
("Complaint"), and a "Motion for Settlement" (Dkt. No.
3). [1] On September 4, 2022, the U.S. District Court for the
District of Vermont disqualified itself pursuant to 28 U.S.C.
§ 445(a) and directed the case be reassigned to a U.S. District
Judge in the Northern District of New York. On September
16, 2022, the case was reassigned to Senior U.S. District
Judge McAvoy and the undersigned. On September 27, 2022,
plaintiff filed a document titled, "Alterations Lost's [sic],
Cost's [sic], Damage's [sic] Foregoing Motion." Dkt. No. 6.
On October 4, 2022, plaintiff filed document titled, "Motion
for Summary Judgment." Dkt. No. 7. Presently before the

Court for review is plaintiff's in forma pauperis application
and review of his complaint pursuant to 28 U.S.C. § 1915.

[1]    Plaintiff commenced three other actions on the
same day. These are discussed, infra, in section II
A.

### I. **In Forma Pauperis**

After reviewing plaintiff's IFP application, [2] Dkt. Nos. 1,
1-1, the Court concludes that plaintiff financially qualifies to
proceed IFP for purposes of filing. [3]

[2]    Although plaintiff commenced four actions, which
the undersigned recommends be consolidated,
the undersigned is explicitly addressing the IFP
application submitted in the first-filed action as
the information submitted with each case's IFP
application is essentially identical.

[3]    Plaintiff is advised that in forma pauperis status
does not cover any costs and fees that may be
associated with this matter, including, but not
limited to, any copying fees that may be incurred.

### II. **Initial Review** [4]

[4]    Plaintiff has also filed four other cases. At least
three of the four cases appear to be related to
the instant case. Those cases, all filed in the U.S.
District Court for the District of Vermont
and reassigned to this Court, are 5:22-CV-162,
Lamothe v. Bankruptcy Court, et al. (filed Aug.
31, 2022); 5:22-CV-163, Lamothe v. Bankruptcy
Court, et al. (filed Aug. 31, 2022); 22-CV-164,
Lamothe v. Cooper, et al. (filed Aug. 31, 2022);
and 2:22-CV-220, LaMothe v. Federal Court Clerk
(filed Dec. 7, 2022).

#### A. **Consolidation**

"Rule 42(a) of the Federal Rules of Civil Procedure
provides for the consolidation of actions pending before
the court which involve "a common question of law or
fact." FED. R. CIV. P. 42(a)(2). As the Second Circuit
has recognized, "[t]he trial court has broad discretion to

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 21 of 70
Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

determine whether consolidation is appropriate," Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990), and may consolidate actions sua sponte. Devlin v. Transportation Commc'ns Intern. Union, 175 F.3d 121, 130 (2d Cir. 1999).

Boyde v. Uzunoff, No. 9:21-CV-0741 (TJM/ATB), 2021 WL 3185472, at *1 (N.D.N.Y. July 28, 2021).

Here, in addition to the instant case, 5:22-CV-161, Lamothe v. Brown, plaintiff commenced three other actions on the same day: 5:22-CV-162 (TJM/CFH), Lamothe v. Bankruptcy Court, et al. (filed Aug. 31, 2022); 5:22-CV-163 (TJM/CFH); Lamothe v. Bankruptcy Court, et al. (filed Aug. 31, 2022); 5:22-CV-164 (TJM/CFH), Lamothe v. Cooper, et al. (filed Aug. 31, 2022).[5] The Court has reviewed the complaints in each of these actions and determines that "common questions of law and fact exist in these cases." Boyde, 2021 WL 3185472, at *1. Although commenced separately, these cases are essentially identical. Plaintiff appears to name the same defendants, and to the extent it can be determined, the cases arise out of the same facts and circumstances and raise the same claims in each of these four actions. Indeed, an identical photocopy of the complaint has been filed in each separate action. See 5:22-CV-161, Dkt. No. 1-2 at 8-20; 5:22-CV-162 Dkt. No. 1-1 at 2-13; 5:22-CV-163 (TJM/CFH), Dkt. No. 1-1 at 6-17; 5:22-CV-164 (TJM/CFH), Dkt. No. 1-1 at 9-20. Further, with the exception of one extra document filed in 5:22-CV-164, plaintiff includes the same documents to each of the complaints in the different actions. See id.[6]

[5] On December 7, 2022, plaintiff commenced a fourth action in the District of Vermont, Lamothe v. Federal Court Clerk, 2:22-CV-220 (TJM/CFH), which was also reassigned to Judge McAvoy and the undersigned. Review of this filing, although very sparse, leads the Court to determine at this time that this action appears distinct enough to proceed with a separate review. Thus, the § 1915 review of Lamothe v. Federal Court Clerk, 2:22-CV-220 (TJM/CFH) (filed Dec. 7, 2022), will occur in a separate, future order.

[6] The complaint in each action is identical, including identical copies of service-related documents and invoices, and a "motion" that appears to set forth plaintiff's monetary demands. The only real difference between these actions is that some of the documents are filed in a different order. One exception to the identical nature of these four

actions is that, unlike in the other three actions, in 5:22-CV-164, Dkt. No. 1-1 at 5, there is a document that is not included in the other actions. This an Order, dated May 25, 2022, from the U.S. Bankruptcy Court, District of Vermont, signed by U.S. Bankruptcy Judge Heather Z. Cooper, denying a "sixth post-closing motion" and advising plaintiff that "[a]ny further post-closing filings which fail to demonstrate cause or meet the requirements to reopen this case or support any other relief that is available will be considered an abuse of process and the Court will consider the imposition of sanctions." Id.

*2  Accordingly, it is recommended that these four actions be consolidated, with 5:22-CV-161, Lamothe v. Brown as the lead case and 5:22-CV-162, 5:22-CV-163, and 5:22-CV-164 as member cases.

## B. Complaint [7]

[7] This Court's citation to the pages of plaintiff's complaint is to the pagination generated by CM/ECF, the Court's electronic filing system, located at the header of each page, and not to plaintiff's individual pagination of the document.

At the top of each page of form complaint,[8] plaintiff writes "Civil-Criminal." See generally Dkt. No. 1-2. In the portion of the form complaint asking plaintiff to demonstrate the basis for this Court's jurisdiction and whether he seeks to proceed before the Court on federal question jurisdiction or diversity of citizenship, plaintiff writes, "Don't Know Yet!!" Dkt. No. 1-2 at 2. Following the form complaint is a handwritten document, the top of which states, "Civil, Criminal." Dkt. No. 1-2 at 5. The heading of the page further states, "Lawsuites [sic] (Contempt of Court) (Breech [sic] of Contracts)", "Alteration Four, Lawsuites [sic] Docket # 098-10014" Dkt. No. 1-2 at 5. Plaintiff further states "Federal Court 11 Elmwood Ave, Burlington VT 05641 Filed January 09, 2009 Re; Malpractice (Contempt of Court) (Breech [sic] of Court.")." Id. Following this information, written as a title, is the word "Motion." Id.

[8] As the complaints in each action are essentially identical, for ease of reference and judicial efficiency, the Court will cite only to the complaint filed in 5:22-CV-161, Dkt. No. 1-2.

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 22 of 70
Lamothe v. Brown, Not Reported in Fed. Supp. (2023)
2023 WL 316013

On the second page of the handwritten portion of the complaint, plaintiff lists the defendants as "(1) Bankruptcy Court 151 West Street Rutland, VT 05701[;] (2) Bankruptcy Court 59-67 Merchant Row Rutland, VT 05701[;] (3) Bankruptcy Court 11 Elmwood Ave Burlington, VT[;] (4) United States Trustee?; (6) Vermont Attorney General 109 State Street Montpelier, VT 05609-100. Dkt. No. 1-2 at 6. Page three of the complaint contains a "certificate of service" wherein plaintiff "certifies" having "delivered the attached to all other parties to this case." Id. at 7. Page four of the lists the names of the defendants again. Id. at 8. Page five has a heading that states "Bankruptcy Lawsuite [sic] file 01-09-09 Docket 09-10014 United States Bankruptcy Court of Vermont Malpractice." Id. at 9. Under this heading, it reads "Alteration One presented years ago!! Alteration two presented years ago!! Alteration three as fallows [sic]!!" Id. It thereafter lists plaintiff's name, address, and "pro se"; "defendants; 4 of 6"; the "Cohen & Rice Law Firm at 161 West Rutland, VT 05701 and 26 West Street, Rutland, VT 05701." Id. The sixth page again contains a heading that states "Bankruptcy Lawsuite [sic] Filed 01-09-2009, Docket 09-10014," "Alterations," "Malpractice", "Bankruptcy Court Washington County Federal Division Bankruptcy 09-1001." Id. It also appears to list a caption of "Plaintiff Jeffrey P. Lamothe Pro-se V. Defendant's [sic] Cohen & Rice Law Firm Rebecca Rice 4 of 6." Id. Under this "caption" states "Complaint Re: Malpractice." Id. This "complaint" states the following:

> (1) Not only what they didn't do wright [sic] is what they did wrong!! (2) What happened to my (A) Land, (B) Buildings? (3) What happened to my monthly rental incomes? (4) What happened to my four hundred thousand equity? (5) What happened to my Tax Wright [sic] Off's [sic] & Credits? (6) Why have I been denied multiple attempts of credit since two thousand an [sic] nine as well as the most recent of September Two Thousand an [sic] Twenty-One? (7) Why I'am [sic] I getting bribed, blackmailed an [sic] provoked.

*3 Id. at 10.

The same "caption" tops the seventh page with a heading that states, "Addition to the Complaint":

> (9) More ways to pay for Mortgages, do [sic] to signs of malpractice them anyone in the country (10) Placing docket 707-0-10 as a foreclosure during the process of Bankruptcy aswell [sic] as fallowing [sic] through as a wrongfull [sic] eviction in December of Two Thousand and Thirteen (11) placing Docket 496-6-10 after a bankruptcy had been filed, on January Nineth of Two Thousand an [sic] nine (1) Adding more debt to credit report after bankruptcy had been filed

Id. at 11. The same "caption" tops the eighth page with a heading that states, "Addition to the Complaint":

> (14) No escrow account for accounts receivable or debt from my rental properties (15) allowing outsiders to invade, approach aswell [sic] as falsify information, (16) (Timely Manner), (Timely Manner), (Timely Manner) (17) Having [sic] a lawfirm [sic] without a cerifide [sic] accountant (18) Releaseing [sic] assets, to other than myself (19) haveing [sic] two, three possibly four differant [sic] female bankruptcy judges throughout the seven years; (20) clerks avoiding all attempts of due process, (21) changeing [sic] chapters as well as false findings in the process of bankruptcy throughout the seven

Id. at 12.

On the eighth page also states, "Addition to the Complaint":

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 23 of 70

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

(23)[9] Timely manner, timely manner, timely manner. (24) Loss of monies up to one hundred thousand in renovations alone, of my own monies. (25) after wrongfull [sic] eviction in December two thousand and thirteen of thee [sic] Rutland Sheriffs Department Aswer [sic] as Vermont State Police Department, thee [sic] house in Procter Vermont had been ransacked aswell [sic] as everthing [sic] taken from thee [sic] inside aswell [sic] as garage (26) possibly forgery, most times when malpractice accures [sic] (27) possibly cover up, when malpractice accures [sic]

Id. at 13.

[9]    There is no number 22 on this page or the prior page.

On the ninth page of the hand-written complaint, the same "caption" tops the page with a heading that states, "Addition to the Complaint":

(30)[10] Didn't fallow [sic] protocol of an accountant of bankruptcy to file yearly taxes since 2009 (31) Refused all services of protocol aswell [sic] as my many attempts to address many wrongdoings (32) numerous attempts from myself to lawyers, courts, court clerks, attorney generals, cities, supreme court of appeals, Supreme Court aswell [sic] as three Superior Courts (33) No mortgage or combined mortgage has been placed or enforced between thee [sic] first an [sic] seventh year.

Id. at 14.

[10]    There is no number 28 or 29 on this page or the prior page.

On the tenth page of the hand-written complaint, the same "caption" tops the page with a heading that states, "Addition to Complaints":

(35) Protocol, Protocol, Protocol, (36) Hasn't anybody listened to thee [sic] Court recording's [sic] (37) Read paper trail already presented (handwritten) myself (38) Listen to Court recording, in my presents [sic] as David Edwards, lawyer for GMAC Mortgage, what had been stated as false information (39) Contempt of Court aswell [sic] as breech [sic] of contract has been practice in all matters of court proceeds [sic] (40) Loss of personel [sic] items, aswell [sic] as tools needed for multyple [sic] industries for myself to make money

*4   Id. at 15.

On the eleventh page of the hand-written complaint, the same "caption" tops the page with a heading that states, "Addition to Complaints":

(43)[11] Do you know what courtroom this is? (44) Do you know what I can do with four hundred thousand dallars [sic] just in equity? (45) Do you know what I can do with four thousand dallars [sic] a month rental income? (46) Actions prove I've been fileing [sic] lawsuites [sic] to a deaf, dumb, and blind bar association, judicial bureau licensing board, police departments, clerks, judges (47) Withholding evidence in all thirteen courtrooms, will force myself no option to place lawsuites [sic] at state

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 24 of 70

2023 WL 316013

Id. at 16.

11    There are no numbers 41 or 42 on this page or the
prior page.

On the twelfth page of the hand-written complaint, the same
"caption" tops the page with a heading that states, "Addition
to Complaints":

> (49 [12] ) Wrongfull [sic] eviction
> multiple times in the mid winter
> months of places I've owned aswell
> [sic] as places I've rented! (50) Probate
> Court of my mother Mary Elizabeth
> Lamothe House Docket #312-5-19,
> on Nineteen Jasmin Lane had been
> mishandled! (51) Loss of Drivers
> license for five years as of not a
> moveing [sic] violation, as I use my
> vehicle for floor installations (51)
> Contempt of court aswell [sic] as
> breech of contracts.

Id. at 17.

12    There is no number 48 on this page or the prior
page.

On the thirteenth page of the hand-written complaint, the
same "caption" tops the page with a heading that states,
"Addition to Complaints":

> (54) [13] withholding evidence, stolen
> identity, birth certificate had been
> stolen, do [sic] to wrongfull [sic]
> evictions aswell [sic] as most of
> personal information an [sic] court
> documents (55) waisted [sic] many
> hours of travel time as well as time
> spent an [sic] preparations of dozen
> of court handwritten documents of a
> plaintiff in lawsuites [sic] (56) houses
> ransacked, broken into, stolen paper
> trail (57) lost living expenses, loss of

wages, loss rental income, taxes not
being filed, damages contents of

Id. at 18.

13    There are no numbers 51, 52, or 53 on this page or
the prior page.

On the fourteenth page of the hand-written complaint, the
same "caption" tops the page with a heading that states,
"Addition to Complaints":

> (58) Racketeering, corruption,
> conspiracy, human traffick [sic],
> money loitering [sic], forgery, false
> paper trail, incorrect headings, debtors,
> dates, tapeing [sic] recordings, video
> (59) Certified letters with return
> signature, up to sixty of them, with
> no response besides of just a signed
> green receipts. (60) Had twice as much
> monies invested in my houses then
> the finace [sic] company had (61)
> federal accounts of my crimal [sic]
> record (wrongfully) (62) wrongfull
> arrest warants [sic] asfore [sic] public
> defender doings

Id. at 19.

The fifteenth page [14] of the handwritten complaint list the
same "caption" but state "Motion" and "Malpractice"

> Alteration one, which has presented
> years ago Five Million[;] Alteration
> two, which was presented years ago
> Six Million[;] Alteration Three, which
> is presented at this date of Seven
> Million. The total which is eighteen
> million to be granted to myself Jeffrey
> Peter Lamothe, no later than twenty
> days of this motion of presented date,

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 25 of 70

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

as losts [sic] and costs an [sic] damages all at foregoing!!

**\*5** Id. at 20.

14    The fifteenth and sixteenth pages of the handwritten complaint are identical. See Dkt. No. 1-2 at 20-21.

Plaintiff's complaint, on a page that contains the same "caption" with a title that states, "Motion," appears to set forth his demand for relief:

> Alteration four of eight million dollars, which brings the total of twenty-six million dollars, to be granted to myself Jeffrey Peter Lamothe [omitted] no later than twenty day's [sic], asfore [sic] this case #09-10014 has been in process since two thousand an [sic] nine, all at lost, costs, damages, all foregoing. Settlement of thee [sic] above will stop all foregoing lost, cost's [sic], damages aswell [sic] as further alterations, an [sic] criminal charges!!"

Id. at 21. In a "conclusion," plaintiff states that he "will settle for four million dollars aswell [sic] as paying off Bershire [sic] Bank Credit Card Account [Omitted], no later than ten day's [sic] of this fourth alteration (after this date motion stands [illegible])." Id.

Attached to the complaint are copies of invoices from the Rutland County Sheriff's Department that appear to show that plaintiff used the Sheriff's Department for service of plaintiff's complaint on defendants. See Dkt. No. 1-2 at 26-33.

### C. Section 1915 Review

#### 1. Legal Standards

Section 1915(e) 15 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court

shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action. Where the plaintiff is proceeding pro se, the court must consider the claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir. 2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)). It is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.' " Matheson v. Deutsche Bank Nat'l Tr. Co., 706 F.Appx. 24, 26 (2d Cir. 2017) (summary order) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam); Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (Where the plaintiff proceeds pro se, a court is "obliged to construe his pleadings liberally.") (quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)). However, this approach "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). The Court may not "invent factual allegations that [the plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

15    The language of section 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). However, courts have construed that section as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002). Accordingly, a financial assessment and, if determined to be financially qualified, an initial review of the complaint pursuant to section 1915 is

Case 1:25-cv-00501-ECC-TWD   Document 13   Filed 07/01/25   Page 26 of 70
**Lamothe v. Brown,** Not Reported in Fed. Supp. (2023)

2023 WL 316013

required of all plaintiffs who seek to proceed IFP, regardless of their incarceration status.

**\*6**  "The [Second Circuit]'s 'special solicitude' for pro se pleadings, Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994), has its limits, because pro se pleadings still must comply with Rule 8(a) of the Federal Rules of Civil Procedure." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019). [16] Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

[16]    Unless otherwise noted, copies of all unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

Further, Rule 10 of the Federal Rules provides:

[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each

defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Ashcroft v. Iqbal, 556 U.S. 622, 678 (2009). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" does not suffice. Id. (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order). Indeed, a complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 27 of 70

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

unintelligible that its true substance, if any, is well disguised."
Id. (citations omitted).

### 2. **Analysis**

#### a. **Jurisdiction**

**\*7** Plaintiff fails to demonstrate this Court's jurisdiction. He does not state which constitutional rights, federal laws, or state laws he believes defendants to have violated. Plaintiff does not explain how all of the named defendants were personally involved in the alleged violations of laws or rights. There is almost no factual support or context for his complaint, which is presented as a disjointed stream of consciousness. Further, it is not fully clear who he intends to name as defendants in this action as he names Judge Colleen Brown in the case caption, and Colleen Brown and "Bankruptcy Court" as defendants in the form complaint, but later lists bankruptcy courts at four different addresses in Vermont, the "United States Trustee," Cohen & Rice Law Firm, and the "Vermont Attorney General." Dkt. No. 1-2 at 6.

Federal jurisdiction is only available when (1) a "federal question" is presented, or (2) the plaintiff and all of the defendants are of diverse citizenship and the amount in controversy exceeds $ 75,000. See 28 U.S.C. §§ 1331, 1332. To invoke federal question jurisdiction, the plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Federal question jurisdiction may properly be invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." New York v. White, 528 F.2d 336, 338 (2d Cir. 1975). When a court lacks subject matter jurisdiction, dismissal is mandatory. See Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). Therefore, although courts "construe a pro se litigant's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." Ally v. Sukkar, 128 F. App'x 194, 195 (2d Cir. 2005) (summary order) (internal citation omitted).

As it appears all named defendants reside in Vermont, plaintiff is a resident of New York State, and plaintiff alleges that the amount in controversy is greater than $75,000, he would be able to proceed under this Court's diversity jurisdiction. The only claims plaintiff explicitly identifies is legal malpractice

and breach of contract, which would be assessed under state law. As will be discussed below, the application of special solicitude reveals to the undersigned that plaintiff may also be attempting to raise constitutional claims for violation of his due process rights in connection with an eviction. Such claims, if properly pleaded in a future complaint and demonstrated to be timely, could also demonstrate the existence of this Court's federal question jurisdiction.

#### b. **Federal Rules of Civil Procedure 8, 10, and 20**

Plaintiff's complaint is violative of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's amended complaint is clearly "a case[ ] in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). First, plaintiff does not provide any facts to provide context for his complaint. Plaintiff's complaint does not explain the background and bases of his complaint; the laws he alleges the defendants violated beyond unexplained and largely isolated references to "malpractice," "breach [sic] of contract," "racketeering, "corruption," "conspiracy," "human traffick[ing]," and "money loitering." [17] Dkt. No. 1-2 at 18. Further, beyond making these references to common law and criminal laws, plaintiff does not set forth how defendants violated any laws or rights or factual support or context to when the alleged incidents occurred. Although plaintiff names several defendants but does not explain their involvement in the violation of any laws or constitutional rights, with many defendants never mentioned anywhere in the body of the complaint. See, e.g., Dkt. No. 1-2 at 6, 14 (naming "attorney generals" and "Vermont Attorney General" in the "caption" or heading, but failing to provide any factual support or explanation of personal involvement).

[17]     It is likely that this is a malapropism and that plaintiff intended to state money laundering.

**\*8** The lack of factual support, context, or clear statements of the claims and explanations as to how each defendant is personally involved in the alleged violation of each area of law or right asserted renders plaintiff's complaint plainly violative of Rule 8 as the complaint does not "give the defendants adequate notice of the claims against them[.]" Sheehy, 335 F. App'x at 104.

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 28 of 70

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

To the extent plaintiff's complaint implores the Court to perform independent research to ascertain the facts or background of his complaint or of his 2009 bankruptcy case – "Hasn't anybody listened to thee [sic] Court recording's [sic][,]" "Read paper trail already presented (handwritten) myself[,]" "Listen to Court recording[,]") – this neither a feasible demand nor a proper one. Dkt. No. 1-2 at 15. Plaintiff has not provided copies of any recordings or "paper trail," nor an explanation of how they apply to any claims he seeks to bring before this Court. If plaintiff wishes this Court to consider any facts, claims, or documents, such information must be included within the complaint or attached thereto and their relevance sufficiently explained.

Plaintiff's complaint, to the extent discernable, also violates Rule 20 of the Fed. R. Civ. P. Rule 20 provides that a plaintiff may not pursue unrelated claims against multiple defendants." Kastner, 2019 WL 6841952, at *2 (citing FED. R. CIV. P. 20(a)(2) ("Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.") and Peterson v. Regina, 935 F. Supp. 2d 628, 638 (S.D.N.Y. 2013) ("Case law makes clear that [i]n the absence of a connection between Defendants' alleged misconduct, the mere allegation that Plaintiff was injured by all Defendants is not sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a).")) (additional citation and quotation marks omitted). Plaintiff makes passing references to legal malpractice, several criminal claims, an arrest involving the Sheriff's Office, an eviction, bankruptcy proceedings, and breach of contract, among other things. Although the complaint is currently too vague and confused for the Court to assess whether there is a sufficient connection between any or all of these potential claims, the Court notes that, to the extent plaintiff seeks to bring multiple, unconnected claims against various unrelated defendants, such an approach is prohibited by Rule 20.

### c. Legal Malpractice Claims

To the extent this Court can surmise, it appears that plaintiff may be seeking to bring legal malpractice claims against the lawyers and/or law firm who represented him in a 2009 bankruptcy proceeding, Cohen & Rice Law Firm and/or Rebecca Rice, and against the bankruptcy judge who oversaw

that proceeding, Colleen Brown. See generally Dkt. No. 1-2. Under Vermont law, the statute of limitations depends on a "determination of the appropriate limitations period depends upon the nature of the harm for which recovery is sought and not upon the nature of the action brought." Bentley v. Northshore Dev., Inc., 935 F. Supp. 500, 503 (D. Vt. 1996) (citing Kinney v. Goodyear Tire & Rubber Co., 134 Vt. 571, 575 (1976). For claims for legal malpractice, where only economic damages are alleged, the appropriate statute of limitations is six years. See, e.g., Bentley, 935 F. Supp at 503-504. If plaintiff's representation occurred in 2009, the statute of limitations would have expired for any legal malpractice claim arising out of that representation six years later, in 2015. See 12 V.S.A. § 511. As plaintiff commenced this action in 2022, it is untimely. Although equitable tolling can, in rare instances, toll a statute of limitations, plaintiff provides no support or argument such that the Court may assess whether equitable tolling could potentially apply. Accordingly, it is recommended that, to the extent plaintiff's complaint may be raising a claim for legal malpractice against his former lawyer/law firm, such claim be dismissed without prejudice and with opportunity to amend should plaintiff seek to demonstrate the applicability of equitable tolling such that a claim for legal malpractice would not be time-barred.

**\*9** Plaintiff also seems to be seeking to bring a claim for legal malpractice against Judge Colleen Brown, the bankruptcy judge presiding over plaintiff's bankruptcy proceedings. However, as Judge Brown presided over the bankruptcy proceedings as a judicial officer, but did not represent plaintiff as his attorney, he cannot bring a claim against her for legal malpractice. As will be discussed and assessed below, it is possible that plaintiff intended to raise a claim for judicial misconduct.

### d. Judicial Immunity

To the extent plaintiff's complaint can be interpreted as attempting to bring a claim for judicial misconduct against Judge Colleen Brown, as is endemic to this entire complaint, plaintiff fails to provide factual context to support or context for such a claim. Despite the complete dearth of facts or context, to the extent plaintiff seeks to allege claims of misconduct against Judge Brown in connection with her role in overseeing, managing, or administration of his bankruptcy case, judicial misconduct claims do not lie for actions that occurred in the judge's role as judge. Judges have absolute immunity from suits for damages arising out of judicial acts

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 29 of 70
**Lamothe v. Brown, Not Reported in Fed. Supp. (2023)**
2023 WL 316013

performed in their judicial capacities. See Mireles v. Waco, 502 U.S. 9, 11 (1991). Absolute judicial immunity "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his [or her] authority." Id. at 11, 13 (quotations and citations omitted). Judicial immunity may only be overcome where the court is alleged to have taken non-judicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." Id. at 11-12. It is not clear whether plaintiff is also seeking to raise a misconduct claim against other employees of the bankruptcy court. See Dkt. No. 1-2 at 12. However, absolute judicial immunity also extends to court clerks/employees who are performing tasks "which are judicial in nature and an integral part of the judicial process." Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997).

As the Court can discern no such allegation, the judicial immunity applies to bar all claims against Judge Brown in connection with her handling of plaintiff's bankruptcy case as week as to all court clerks who performed judicial tasks. Although exceptions to judicial immunity exist only in the narrow circumstance noted above, because plaintiff's complaint is so factually sparse such that the Court cannot say with certainty whether plaintiff is contending that any of Judge Brown's alleged actions were "non-judicial" or done "in the complete absence of all jurisdiction," it is recommended that, to the extent plaintiff's complaint can be read as raising a claim for judicial misconduct against Judge Colleen Brown or unidentified court clerks, such claims be dismissed without prejudice.

### e. Outcome of Bankruptcy Proceedings

To the extent plaintiff disagrees with the outcome of his 2009 bankruptcy case or seeks this Court to review the outcome of any of his bankruptcy proceedings, such an attempt is untimely. Although U.S. District Courts have jurisdiction to hear appeals from, "final judgments, orders, and decrees" and certain interlocutory orders and decrees from the bankruptcy court, 28 U.S.C. § 158(a), "a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." FED. R. BANKR. 8002; see In re NXXI Inc., 216 F. Supp. 3d 381, 388 (S.D.N.Y. 2016). Thus, plaintiff's seeking review of a 2009 [18] bankruptcy case by filing new actions in 2022, thirteen years later, is plainly untimely. [19]

[18]   Although plaintiff's bankruptcy proceeding was commenced in 2009, it is not entirely clear the date of the entry of judgment. However, as the Court has an Order from the Bankruptcy Court indicating that plaintiff had submitted a sixth post-closing motion, and that order is dated May 23, 2022, and plaintiff commenced these federal actions in August 31, 2022, even in the highly unlikely (as plaintiff commenced his bankruptcy action in 2009, it would appear unlikely to still be pending in 2022) circumstance that plaintiff's final judgment in his bankruptcy proceeding occurred in May 2022,s because a plaintiff has fourteen days to appeal a judgment, order, or decree of a bankruptcy court, this action would still be untimely. FED. R. BANKR. 8002.

[19]   The Court observes that 28 U.S.C. § 158(a)(1), grants a district court jurisdiction over appeals of "final judgments, orders, and decrees[,]" "from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title[,]" or "with leave o the court, from other interlocutory orders and decrees[.]" Plaintiff does not state whether he is purporting to seek "appellate" review over a final judgment, order, or decree from the bankruptcy court

**\*10**   To the extent plaintiff is attempting another chance at review of the outcome of his bankruptcy proceeding by commencing a separate civil action, such an approach is not permissible. See, e.g., Zarour v. U.S. Bank, N.A. as a trustee for Truman 2016 SC6 Title Tr., No. 21-CV-2928 ((LTS), 2021 WL 3500921, at *2 (S.D.N.Y. Aug. 9, 2021) ("[T]he proper vehicle for Plaintiff to challenge the Bankruptcy Court's decision to dismiss the petition is Plaintiff's appeal of that decision, not this new civil action.").

In one of the four actions plaintiff filed, plaintiff includes a copy of an Order dated May 24, 2022, from the United States Bankruptcy Court, District of Vermont, signed by U.S. Bankruptcy Judge Heather Z. Cooper. Therein, the Judge notes that plaintiff commenced a Chamber 13 bankruptcy petition on January 9, 2009, which was converted to a chamber 7 bankruptcy proceeding effective September 21, 2010. See 5:22-CV-164 ("Lamothe IV"), Dkt. No. 1-1 at 5. In the motion, the Judge Cooper denies plaintiff's "sixth post-closing motion in this case," holding that plaintiff's motion "fails to demonstrate cause or meet the requirements to re-

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 30 of 70
Lamothe v. Brown, Not Reported in Fed. Supp. (2023)
2023 WL 316013

open the Debtor's case under 11 U.S.C. § 350(b) or support any other relief that is available or warranted based upon the record of this closed case" and advised plaintiff that "[an]y further post-closing filings which fail to demonstrate cause or meet the requirements to reopen this case or support any other relief that is available will be considered an abuse of process and the Court will consider the imposition of sanctions." Id.

In sum, to the extent plaintiff is attempting to appeal the outcome of his bankruptcy proceeding or otherwise seek review of the decision, because this Court does not have jurisdiction over that claim, it is recommended that such claim be dismissed without prejudice, but without opportunity to amend. See Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]"); see also Amore Love, No. 1:21-CV-64 (DNH/ATB), 2021 WL 256945, at *6, n.15 (N.D.N.Y. Jan. 26, 2021) (citations omitted) ("Because this court is recommending dismissal for lack of subject matter jurisdiction, the court is constrained to recommend dismissal 'without prejudice,' although it is unlikely that this petitioner will be able to bring such an action in any court in the country, state or federal. However, the court is recommending that petitioner be denied the opportunity to amend because it is clear that any amendment would be futile.").

Plaintiff also makes several references to "contempt of court" but does not explain. To the extent that plaintiff is seeking that this Court hold any defendant in contempt of court, as no defendant has been properly served nor has appeared in this action, it is not possible for any defendant to have been in contempt of this Court's orders. Further, this Court does not have the authority to hold a defendant in contempt of any other court's orders. Accordingly, this claim is dismissed with prejudice.

### f. **Due Process**

Plaintiff, without providing any contextual support, makes a passing reference to due process. See Dkt. No. 1-2 at 12 ("clerks avoiding all attempts of due process"). This bare statement is insufficient to raise a due process violation. First, his statement of "clerks" does not identify the persons against whom he seeks to bring them claim and he provides no facts or support for how his due process rights were violated.

**\*11**  Even if plaintiff seeks to bring a claim for violation of his due process rights under section 1983, in addition to failing to provide any factual context for this claim, to the extent plaintiff's potential due process claim arises out of his 2009 bankruptcy proceeding, he fails to demonstrate why such a claim would not be barred by the statute of limitations. In § 1983 actions, the applicable statute of limitations is a state's "general or residual statute for personal injury actions." Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). The statute of limitations for claims brought pursuant to § 1983 is determined by state law, and in the State of Vermont, the statute of limitations for actions brought pursuant to § 1983 is three years. See Tester v. Pallito, No. 2:19-CV-146-CR-JMC, 2020 WL 2813607, at *3 (D. Vt. Mar. 9, 2020), report and recommendation adopted, No. 2:19-CV-146, 2020 WL 2793164 (D. Vt. May 29, 2020); Owens v. Okure, 488 U.S. 235, 249-51 (1989) (holding that the most appropriate statute of limitations in a § 1983 action is found in the "general or residual [state] statute [of limitations] for personal injury actions"); Wallace v. Kato, 549 U.S. 384, 387 (2007). ""While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (quoting Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir.1994)). On rare occasions, the principle of equitable tolling may prolong the allowable time for filing a complaint under § 1983. See Walker v. Jastremski, 430 F.3d 560, 564 (2d Cir. 2005) (citing Doe v. Menefee, 391 F.3d 147, 159 (2d Cir. 2004)). To obtain the benefit of equitable tolling, a plaintiff must demonstrate that "extraordinary circumstances prevented [him] from timely performing a required act" and that he "acted with reasonable diligence throughout the period he [sought] to toll." Id. Alternatively, the statute of limitations may be tolled if "the person entitled to commence an action is under disability because of infancy or insanity at the time the cause of action accrues." N.Y. C.P.L.R. § 208.

### g. **Eviction**

#### i. **Wrongful Eviction**

Plaintiff makes references to a wrongful eviction and an unlawful warrant in December 2013. Dkt. No. 1-2 at 13, 18, 20 ("wrongful [sic] arrest warants [sic]."). As indicated, there is not any factual context for these statements. Although it is not clear whether the "warrant" to which he refers is a warrant of eviction or an arrest warrant, contextual clues in

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 31 of 70

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

the complaint appear to suggest that plaintiff is referring to an unlawful warrant of eviction, rather than a criminal arrest warrant. It is not clear whether plaintiff is contending he was evicted from a home he owned, home he rented, or whether he was evicted from public housing. If he were evicted from public housing, he may be "entitled to certain due process of law before he can be deprived of continued tenancy." Oliver v. City of New York, No. 11-CV-1075 (ARR), 2011 WL 157844, at *3 (citing Escalera v. New York City Housing Authority, 425 F.2d 853, 861 (2d Cir.1970) ("The government cannot deprive a private citizen of his continued tenancy, without affording him adequate procedural safeguards even if public housing could be deemed to be a privilege."); Board of Regents v. Roth, 408 U.S. 564, 577 (1972) (procedural due process protects property rights created by state law).

It cannot be determined from the complaint whether plaintiff is attempting to argue that the warrant of eviction was somehow defective or if he is arguing that the execution of the eviction was somehow unlawful. It is further unclear whether the issue of eviction was addressed as part of his bankruptcy proceedings and against whom he is attempting to levy any potential wrongful eviction claim. Moreover, it is not exactly clear when the eviction occurred such that the Court may consider whether it is timely pursuant to the statute of limitations. As the Court does not have sufficient factual information or contextual support to properly assess whether plaintiff is claiming that an eviction violated his constitutional rights, it is recommended that any wrongful eviction claim brought under Vermont law be dismissed without prejudice such that plaintiff has an opportunity to amend to cure these defects.

### ii. Property Damage/Loss

Plaintiff states that a house was "ransacked" and "everthing [sic] taken from thee [sic] inside aswell [sic] as garage" by the Rutland Sherriff's Department and Vermont State Police Department in connection with an eviction. Dkt. No. 1-2 at 13. It is arguable that plaintiff is seeking to raise a claim for excessive or unreasonable property damage in violation of the Fourth Amendment. Plaintiff may also be suggesting that some of his property was taken in association with the eviction. See id. at 13, 18-19. The Supreme Court of the United States has held that the Fourth Amendment protects possessory interests in property, even where there has not been a "search" within the meaning of the Fourth Amendment. See Soldal v. Cook Cnty., Ill., 506 U.S. 56

(1992). However, such property damage or loss must be excessive and/or unreasonable to rise to the level of a constitutional claim. Courts have generally held that any property destruction that is not reasonably necessary for the performance of a law enforcement officer's duties constitutes an unreasonable seizure under the Fourth Amendment. See, e.g., 98 A.L.R. 5thh 305, Destruction of Property as Violation of Fourth Amendment (2002).

*12 As a threshold issue, any Fourth Amendment claim plaintiff may have in connection with a 2013 eviction is likely barred by the statute of this limitation. If this incident occurred in 2013, the statute of limitation would have expired three years later, in 2016. See Tester, 2020 WL 2813607, at *3. Thus, plaintiff may only be able to proceed on such a claim if he demonstrates that tolling applies. In addition to the statute of limitations concern, this claim must fail as it currently stands because there simply is not any factual support or context such that the Court would be able to assess against which defendants the claims were made, the property plaintiff alleges to have been damaged or destroyed by the Sheriff's Department in connection with the eviction and why such damage is excessive or unnecessary. Similarly, to the extent plaintiff claims the Sheriff's Department unnecessarily seized his property in connection with the execution of an eviction warrant, plaintiff must provide sufficient detail in connection with such a claim.

Finally, if plaintiff can overcome the defects noted above, plaintiff would only be able to proceed against a municipal defendant, such as the Sheriff's Office, under a Monell claim. See Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 665-83, 691 (1978)Although plaintiff does not name the Sheriff's Office as a defendant either in the caption of the complaint or in any of the lists of defendants within the complaint, applying special solicitude, should plaintiff wish to proceed against the Rutland County Sheriff's Office, because such an entity is a municipality, to proceed for violation of any constitutional rights in association with an eviction, plaintiff would need to plead that there existed a specific policy or custom that lead to the violation of his constitutional rights. See Monell, 436 U.S. at 665-83, 69; see also Rudavsky v. City of S. Burlington, No. 2:18-CV-25, 2018 WL 4639096, at *2 (D. Vt. Sept. 27, 2018) ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that the individuals who violated their federal rights took "action pursuant to official municipal policy. Official municipal policy includes not only the decisions of a government's lawmakers, but also the acts

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 32 of 70

Lamothe v. Brown, Not Reported in Fed. Supp. (2023)

2023 WL 316013

of its policymaking officials, and practices so persistent and widespread as to practically have the force of law .... These are action[s] for which the municipality is actually responsible.") (internal citations and quotation marks omitted).

Accordingly, in light of special solicitude, it is recommended that any potential Fourth Amendment claim for excessive property damage or destruction be dismissed without prejudice and with opportunity to amend to permit plaintiff a chance to demonstrate (1) why such a claim is not barred by the three-year statute of limitations for § 1983 claims, and (2) provide sufficient factual support, (3) identify the specific defendants against whom he wishes to bring the claim, and (4) set forth whether he believes defendants were acting pursuant to an official municipal policy and identify such policy.

As this Court must provide special solicitude to pro se plaintiffs, Triestman, 470 F.3d at 475, and in light of the directive that caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983), it is recommended that plaintiff be provided one opportunity to amend his complaint.

### h. Criminal Claims

Plaintiff's complaint makes unexplained references to racketeering, corruption, conspiracy, human trafficking, [20] money laundering, forgery, and houses ransacked, broken into, stolen paper trail." Dkt. No. 1-2 at 13, 18-19. To the extent plaintiff seeks to proceed with criminal claims against any defendants, such claims must fail. Plaintiff lacks standing to initiate a criminal proceeding against any party. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). This Court "does not have the authority or jurisdiction to ... seek the criminal prosecution of individuals at the request of a plaintiff," Walker, 2021 WL 3518439, or "impose civil penalties for alleged criminal acts of which a defendant has not been convicted, commence a criminal prosecution, compel a law enforcement agency to investigate suspected criminal activity, nor compel a prosecutor to prosecute." Eggsware v. Doe, 1:22-CV-54 (BKS/CFH), 2022 WL 827640, at *5 (N.D.N.Y. Feb. 7, 2022) report recommendation adopted by Eggsware v. Doe, 2022 WL 823646 (N.D.N.Y. Mar. 18, 2022). Thus, to the

extent plaintiff wishes to proceed on criminal claims, it is recommended that such claims be dismissed with prejudice and without opportunity to amend for failure to state a claim upon which relief can be granted. See 28 U.S.C. § 1915(e)(2) (B)(i).

[20]    Plaintiff states "human traffick[,]" but the Court believes that plaintiff means human trafficking. Dkt. No. 1-2 at 19.

### i. Breach of Contract

**\*13**  Plaintiff also includes in his complaint the phrases "contempt of court" and "breech [sic] of contract" but fails to explain (1) how "contempt of court" – which only a judge can impose – applies, who he seeks to hold in contempt of court, and why; and (2) the defendants involved in the alleged breach of contract, the terms of the alleged contract, and how and when defendants allegedly breached the alleged contract. As plaintiff has provided no factual or contextual support for his breach of contract claim, it must be dismissed with prejudice. Further, plaintiff must also demonstrate how a breach of contract claim arises from the same facts and circumstances such that it should be considered as part of the same lawsuit. See FED. R. CIV. P. 20.

### j. Official Capacity Claims

Plaintiff does not specify whether he intends to bring his claims against Judge Colleen Brown, United States Trustee, and Vermont Attorney General in their personal capacities or official capacities. Section 1983 does not authorize suits against state officials in their official capacities. he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." Abrahams v. Appellate Div. of Supreme Court, 473 F.Supp.2d 550, 556 (S.D.N.Y. 2007) (citing Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d. Cir. 1977). Section 1983 claims do

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 33 of 70
Lamothe v. Brown, Not Reported in Fed. Supp. (2023)
2023 WL 316013

not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979). "[C]laims against a government employee in his official capacity are treated as claims against the municipality," and, thus, cannot stand under the Eleventh Amendment. Hines v. City of Albany, 542 F.Supp. 2d 218 (N.D.N.Y.2008). Accordingly, it is recommended that, to the extent it can be interpreted that any claims are sought for monetary damages against the individual defendants in their official capacities, such claims be dismissed with prejudice, and that any future claims may be brought against such defendants only in their personal capacities.

### k. **Opportunity to Amend**

Plaintiff is advised that, should the District Judge permit him to file an amended complaint, the amended complaint must set forth a short and plain statement of the claim and the facts he relies on in support of his claims. He must specify how each individual named as a defendant in that pleading engaged in acts of misconduct or wrongdoing which violated laws or constitutional rights. An amended complaint may only replead claims that were dismissed by this Court without prejudice. Any amended complaint will replace and supersede the complaint in its entirety and, thus, must be a complete pleading containing all of the facts, allegations, parties, and legal claims that plaintiff wishes to include, except for any that have been dismissed by this Court with prejudice. See Arce v. Walker, 139 F.3d 329, 332 n.4 (2d Cir. 1998) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

### III. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application for leave to proceed in forma pauperis, Dkt. No. 1-1 (5:22-CV-161), is **GRANTED** for purposes of filing; and it is

**\*14** (1) **RECOMMENDED**, that plaintiff's complaint, Dkt. No. 1-2 (5:22-CV-161), be **DISMISSED** as follows:

(a) plaintiff's claims, insofar as they attempt to proceed on any criminal claims be **DISMISSED WITH PREJUDICE**; and it is

(b) any potential section 1983 claims against defendants Judge Colleen Brown, United States Trustee, and Vermont Attorney General in their official capacities which seek monetary damages be **DISMISSED WITH PREJUDICE**;

(c) plaintiff's "contempt of court" claims be **DISMISSED WITH PREJUDICE**;

(d) plaintiff's claim for legal malpractice against Judge Collen Brown be **DISMISSED WITH PREJUDICE**;

(e) plaintiff's attempt to appeal or otherwise seek review of the outcome of his 2009 bankruptcy proceeding be **DISMISSED WITHOUT PREJUDICE and <u>WITHOUT</u> OPPORTUNITY TO AMEND**;

(f) that the remainder of plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** and **<u>WITH</u> OPPORTUNITY TO AMEND**; and it is further

(4) **RECOMMENDED**, that if the District Judge adopt this Report-Recommendation & Order, plaintiff be given thirty (30) days from the filing date of the Order adopting the Report-Recommendation & Order to file an amended complaint, and if plaintiff does not file an amended complaint within that time frame, the case be closed without further order of the Court; and it is further

(5) **RECOMMENDED**, that: (a) this matter (5:22-CV-161 "Lamothe I") be **CONSOLIDATED** with 5:22-CV-162 ("Lamothe II"), 5:22-CV-163 ("Lamothe III"), and 5:22-CV-164 ("Lamothe IV"), with the lead case being 5:22-CV-161, and the member cases being 22-CV-162, 5:22-CV-163, and 5:22-CV-164, and, (b) if consolidation is granted, that this Report-Recommendation & Order be docketed and served in all cases, with future filings to be docketed in only the lead case; and it is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation & Order on plaintiff in accordance with Local Rules.

**\*15** Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14) days** within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health

2023 WL 316013

and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [21]

[21]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).

**Lamothe v. Brown, Not Reported in Fed. Supp. (2023)**
Case 1:25-cv-00501-ECC-TWD   Document 13   Filed 07/01/25   Page 35 of 70
2023 WL 316013

**All Citations**

Not Reported in Fed. Supp., 2023 WL 316013

---

**End of Document**                                         © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00501-ECC-TWD   Document 13   Filed 07/01/25   Page 36 of 70

Joseph v. JRF Income Tax Business Services, Not Reported in Fed. Supp. (2021)

2021 WL 3516421

2021 WL 3516421
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Anderson JOSEPH, Plaintiff,
v.
JRF INCOME TAX BUSINESS SERVICES, Defendant.

Anderson Joseph, Plaintiff,
v.
McDonald's Restaurant, Defendant.

Anderson Joseph, Plaintiff,
v.
North Shore University Hospital, Defendant.

Anderson Joseph, Plaintiff,
v.
Social Security Office, Defendant.

Anderson Joseph, Plaintiff,
v.
T-Mobile, Defendant.

Anderson Joseph, Plaintiff,
v.
Department of the Treasury Internal
Revenue Service, Defendant.

Anderson Joseph, Plaintiff,
v.
Great Neck Plaza Village of, Defendant.

Anderson Joseph, Plaintiff,
v.
Help to Adjust Counseling,
Anger Management, Defendant.

Anderson Joseph, Plaintiff,
v.
New York State Insurance Fund, Defendant.

Anderson Joseph, Plaintiff,
v.
Capital One Bank, Defendant.

Anderson Joseph, Plaintiff,
v.
Charra Nalini, Defendant.

Anderson Joseph, Plaintiff,
v.
Ctown Supermarket, Defendant.

Anderson Joseph, Plaintiff,
v.
Lantern Diner, Defendant.

21-CV-3869 (PKC) (PK), 21-CV-3870 (PKC)
(PK), 21-CV-3872 (PKC) (PK), 21-CV-3873
(PKC) (PK), 21-CV-3874 (PKC) (PK), 21-

Joseph v. JRF Income Tax Business Services, Not Reported in Fed. Supp. (2021)

2021 WL 3516421

CV-3876 (PKC) (PK), 21-CV-3877 (PKC) (PK), 21-
CV-3878 (PKC) (PK), 21-CV-3879 (PKC) (PK), 21-
CV-3880 (PKC) (PK), 21-CV-3881 (PKC) (PK),
21-CV-3882 (PKC) (PK), 21-CV-3883 (PKC) (PK)

|

Signed 08/10/2021

**Attorneys and Law Firms**

Anderson Joseph, Queens Village, NY, Pro Se.

### MEMORANDUM & ORDER

PAMELA K. CHEN, United States District Judge:

**\*1** Plaintiff Anderson Joseph filed these 13 *pro se* actions on
June 8, 2021 under 42 U.S.C. § 1983 ("Section 1983"). [1] The
actions are consolidated solely for the purpose of this Order.
Plaintiff's requests to proceed *in forma pauperis* ("IFP")
pursuant to 28 U.S.C. § 1915 are granted. For the reasons
discussed below, all 13 Complaints are dismissed.

[1]     The Court notes that in recent months, Plaintiff
        has filed more than 20 other cases against various
        individuals, organizations, and entities, all but
        one of which was dismissed for failure to state
        a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).
        *See Joseph v. Supreme Ct. of the State of N.Y.*,
        No. 21-CV-1685 (PKC) (PK); *Joseph v. Legal
        Aid Soc'y*, No. 21-CV-1686 (PKC) (PK); *Joseph
        v. N.Y.C. Police Dep't*, No. 21-CV-1687 (PKC)
        (PK); *Joseph v. Kirby Forensic Psychiatric Ctr.*,
        No. 21-CV-1688 (PKC) (PK); *Joseph v. Dep't of
        Probation*, No. 21-CV-1689 (PKC) (PK); *Joseph v.
        Nassau Cnty. Probation*, No. 21-CV-1690 (PKC)
        (PK); *Joseph v. Row Hotel*, No. 21-CV-1691 (PKC)
        (PK); *Joseph v. Children's Rescue Fund*, No. 21-
        CV-1692 (PKC) (PK); *Joseph v. Landing Fam.
        Shelter*, No. 21-CV-1693 (PKC) (PK); *Joseph v.
        Spring Fam. Residence*, No. 21-CV-1694 (PKC)
        (PK); *Joseph v. Hollis Fam. Residence*, No. 21-
        CV-1695 (PKC) (PK); *Joseph v. MTA NYC Transit*,
        No. 21-CV-1696 (PKC) (PK); *Joseph v. Stark*, No.
        21-CV-2136 (PKC) (PK); *Joseph v. Jamaica Hosp.
        Med. Ctr.*, No. 21-CV-2137 (PKC) (PK); *Joseph
        v. Mount Sinai Queens*, No. 21-CV-2139 (PKC)
        (PK); *Joseph v. NYU Langone Med. Bus. Off.*,
        No. 21-CV-2140 (PKC) (PK); *Joseph v. Queens
        Hosp. Ctr.*, No. 21-CV-2141 (PKC) (PK); *Joseph v.*

*Wells Fargo Bank*, No. 21-CV-2810 (PKC) (PK);
*Joseph v. TD Bank*, No. 21-CV-2811 (PKC) (PK);
*Joseph v. Ridgewood Sav. Bank*, No. 21-CV-2812
(PKC) (PK); *Joseph v. CMJ Mgmt. Inc.*, No. 21-
CV-2813 (PKC) (PK); *Joseph v. Chase Bank*, No.
21-CV-2814 (PKC) (PK); *Joseph v. Bank of Am.*,
No. 21-CV-2816 (PKC) (PK).

### LEGAL STANDARD

A complaint must plead facts sufficient to "state a claim
to relief that is plausible on its face." *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007). Although all allegations
contained in the compliant are assumed to be true, this
tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009). A document filed *pro se* is to
be liberally construed, and "a *pro se* complaint, however
inartfully pleaded, must be held to less stringent standards
than formal pleadings drafted by lawyers." *Ceara v. Deacon*,
916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*,
551 U.S. 89, 94 (2007)); *see McEachin v. McGuinnis*, 357
F.3d 197, 200 (2d Cir. 2004) ("[A] court is obliged to construe
[*pro se*] pleadings liberally, particularly when they allege civil
rights violations."). "If [a] liberal reading of the complaint
'gives any indication that a valid claim might be stated,' the
Court must give the plaintiff an opportunity to amend the
complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-
CV-1616 (PKC) (PK), 2019 WL 1675999, at \*2 (E.D.N.Y.
Apr. 16, 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112
(2d Cir. 2000)).

**\*2** Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), a district
court shall dismiss an IFP action where it is satisfied that
the action "(i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii) seeks monetary
relief against a defendant who is immune from such relief." 28
U.S.C. § 1915(e)(2)(B). "An action is frivolous when either:
(1) the factual contentions are clearly baseless, such as when
allegations are the product of delusion or fantasy; or (2) the
claim is based on an indisputably meritless legal theory."
*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d
Cir. 1998) (internal quotation marks and citation omitted).

### BACKGROUND

In his Complaint against **JRF Income Tax Business Services
("JRF")**, Plaintiff alleges that on February 21, 2020, he called
JRF to inquire about his income taxes and spoke with Mr.

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 38 of 70

Joseph v. JRF Income Tax Business Services, Not Reported in Fed. Supp. (2021)

2021 WL 3516421

Joseph Francois, who "d[id]n't have any information about either [Plaintiff] or [his] wife," prompting Plaintiff to ask Mr. Francois if he "has a license to do taxes[.]" (No. 21-CV-3869, Dkt. 1, at 3–4.) Plaintiff alleges that Mr. Francois became "mad" and cursed at him. (*Id.* at 4.) As a result, Plaintiff "felt disrespect and discrimination at the same time" and noted that Mr. Francois's "office is too small for business." (*Id.*) Plaintiff claims that he felt stressed and sad, and he seeks $3 million in monetary damages for pain and suffering. (*Id.* at 4–5.)

In his Complaint against **McDonald's Restaurant**, Plaintiff alleges that on May 19, 2016, he went to a McDonald's location in West Hempstead, New York and discovered that "the McDonalds [was] using [his] ideas from [a previous] complaint, things like breakfast all day and a better customer service because before the customer service was very bad." (No. 21-CV-3870, Dkt. 1, at 3–4.) Plaintiff alleges that he was verbally abused and "discriminated for no reason." (*Id.* at 4.) Plaintiff alleges that he felt depressed and sad, and he seeks unspecified monetary damages for discrimination and pain and suffering. (*Id.* at 4–5.)

In his Complaint against **North Shore University Hospital ("North Shore")**, located in Manhasset, New York, Plaintiff alleges that while in police custody on December 6, 2013, he was taken to the North Shore emergency department for treatment to a cut on his right hand. (No. 21-CV-3872, Dkt. 1, at 3–4.) Plaintiff alleges that his injury required surgery, but that the doctor did not give him anesthesia, so he "felt the sensation of the pain very badly" and "after the surgery [he] kept on giving blood until [he] arrive[d] to Rikers Island." (*Id.* at 4.) Plaintiff alleges that he suffered from "injuries, stressful depression[,] and sleep disorder," and he seeks $500 million in damages for pain and suffering. (*Id.* at 4–5.)

In his Complaint against the **"Social Security Office,"** Plaintiff alleges that on May 23, 2016, March 19, 2021, and other occasions, the Social Security Office discriminated against and disrespected him. (No. 21-CV-3873, Dkt. 1, at 3–4.) Plaintiff alleges that he experienced bad customer service, including waiting "1 to 2 hours over the phone" before being informed that he did not qualify for benefits and waiting "for 8 hours" at the office without anyone serving him. (*Id.* at 3–4.) Plaintiff alleges that he experienced depression and pain, and he seeks unspecified money damages. (*Id.* at 4–5.)

In his Complaint against **T-Mobile**, Plaintiff alleges that during a phone call on May 19, 2016, T-Mobile customer service "treat[ed] [him] as [he] sa[id] in [his previous]

complaint and us[ed] [his] idea for a better service and [he] need[s] to get paid for that." (No. 21-CV-3874, Dkt. 1, at 3–4.) Plaintiff alleges that he experienced depression, stress, and emotional pain, and he seeks unspecified money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

**\*3** In his Complaint against the **Department of Treasury Internal Revenue Service ("IRS")**, Plaintiff alleges that since 2012, a Florida-based company did his taxes, so he is not responsible for them, and "any time [he] called IRS over the phone the agents disrespected [him] because they d[id]n't have any answers for [him]." (No. 21-CV-3876, Dkt. 1, at 4.) Plaintiff alleges that the IRS charged him $5,000 to "pay back," made him wait "1 to 2 hours" on the phone, and "abuse[d] [him] verbally [and he] felt discriminated and [dis]respected." (*Id.*) Plaintiff alleges that felt depression and stress, and he seeks $100 million in damages for pain and suffering. (*Id.* at 4–5.)

In his Complaint against **"Great Neck Plaza Village Of"** [2] **("Great Neck")**, Plaintiff alleges that on August 10, 2016, he was verbally abused and "discriminated at work as a community organizer" because a driving instructor for the "city government office in Great Neck hung up the phone in [his] face several times" when he was "telling them ... that [Great Neck] was not safe to drive." (No. 21-CV-3877, Dkt. 1, at 3–4.) Plaintiff alleges that he felt depressed and verbally abused, and he seeks unspecified money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

[2]  The Village of Great Neck is located in Nassau County, New York. *See* https://www.greatneckvillage.org/ (last visited July 27, 2021).

In his Complaint against **Help to Adjust, Anger Management ("Help to Adjust")**, a private counseling center, [3] Plaintiff alleges that his probation officer sent him for weekly counseling sessions, including on June 29, 2017, where the counselor asked questions about his life and December 6, 2013 arrest, and he was required to get drug tested. (No. 21-CV-3878, Dkt. 1, at 3–4.) Plaintiff states that he "felt discriminated [against] because [the counselor] was using [him] to better her job position and [he] didn't get paid for it[,] and after her interview with [him], [he] always felt dizziness and emotional stress." (*Id.* at 4.) Plaintiff alleges that he felt stress, and he seeks $3 million in damages for pain and suffering. (*Id.* at 5.)

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 39 of 70

Joseph v. JRF Income Tax Business Services, Not Reported in Fed. Supp. (2021)
2021 WL 3516421

3    Help to Adjust is a counseling center that offers general therapy, marriage and relationship counseling, and anger management counseling. *See* Help to Adjust Counseling & Anger Management, http://www.valleystreamtherapist.com/ (last visited on July 27, 2021).

In his Complaint against **New York State Insurance Fund ("NYSIF")**, Plaintiff alleges that on June 6, 2016 and April 28, 2021, he was discriminated against and verbally abused over the phone by an NYSIF employee, who denied him information. (No. 21-CV-3879, Dkt. 1, at 3–4.) Plaintiff alleges that he felt depression, stress, and emotional pain, and he seeks unspecified money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

In his Complaint against **Capital One Bank ("Capital One")**, Plaintiff alleges that from 2015 until April 9, 2021, including on November 5, 2020, "Capital One Bank [was] always changing [his] balance and took [his] money illegally." (No. 21-CV-3880, Dkt. 1, at 3–4.) Plaintiff alleges that he called customer service to "let them know" and they made him wait "a good 1 to 2 [hours]" and "discriminate[d] [against him] over the phone." (*Id.* at 4.) Plaintiff alleges that he felt depression and stress, and he seeks $500 million in money damages for discrimination and pain and suffering. (*Id.* at 4–5.)

In his Complaint against **Charra Nalini**, Plaintiff alleges that he was injured in a car accident while he was a driving instructor at Nalini's driving school, and that on May 26, 2016, Nalini, "refused to give [him] information about [ ] car insurance." (No. 21-CV-3881, Dkt. 1, at 3–4.) Plaintiff also alleges that he called Nalini to ask for his last paycheck, but she hung up on him. (*Id.* at 4.) Plaintiff seeks unspecified money damages for pain and suffering. (*Id.* at 5.)

**\*4** In his Complaint against **CTown Supermarket ("CTown")**, Plaintiff alleges that on June 9, 2021,[4] employees at a CTown located in Jamaica, New York, verbally abused, threatened, and treated him badly, prompting Plaintiff to call the police "for discrimination." (No. 21-CV-3882, Dkt. 1, at 3–4.) Plaintiff alleges that he felt stress and "emotional injury" and that CTown "need[s] to stop experiments on [him]." (*Id.*) Plaintiff seeks $500 million in money damages for discrimination. (*Id.* at 5.)

4    The Court notes that this action was filed on June 8, 2021, the day *before* this alleged event.

Finally, in his Complaint against **Lantern Diner**, located in West Hempstead, New York, Plaintiff alleges that on June 6, 2016, he "went to Lantern Diner and [ ] saw the Diner servers treat [him] as [he said] in [his] complaint, but the Diner us[ed] [his] idea and [he] need monetary [sic] for it." (No. 21-CV-3883, Dkt. 1, at 3–4.) Plaintiff attaches materials related to a state court action in which he alleges Lantern Diner discriminated against him. (Dkt. 1-2.) Plaintiff alleges that he felt depression and stress, and he seeks unspecified money damages for discrimination and pain and suffering. (No. 21-CV-3883, Dkt. 1, at 4–5.)

## DISCUSSION

**I. 42 U.S.C. § 1983**
Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). To state a claim under Section 1983, a plaintiff must allege that the conduct at issue was "committed by a person acting under color of state law" and that the conduct deprived the plaintiff "of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

"[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v.*

Joseph v. JRF Income Tax Business Services, Not Reported in Fed. Supp. (2021)

2021 WL 3516421

*Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted). However, the Second Circuit has identified three main tests for determining when the actions of a "nominally private entity are attributable to the state" for purposes of Section 1983 liability:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (alteration in original) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (citations omitted).

**\*5** Here, Plaintiff's claims against JRF, McDonald's, North Shore, T-Mobile, Help to Adjust, Capital One, Charra Nalini, CTown and Lantern Diner fail because they are all private entities beyond the reach of Section 1983 liability. Plaintiff does not allege that any of these entities acted under color of state law, and there are no facts in the Complaints that demonstrate, even on a liberal reading, that the actions of these Defendants may be "fairly attributable" to the state. Therefore, the Complaints must be dismissed. *See Boothe v. Rossrock Funds II LP*, No. 16-CV-900 (PKC), 2017 WL 2271360, at \*8 (E.D.N.Y. May 23, 2017) (dismissing Section 1983 claims against private corporations, including a bank, because none were "State actors for purposes of 42 U.S.C. § 1983" and the amended complaint "utterly fail[ed] to allege that [the] [d]efendants' actions are attributable to the State" (citation omitted)); *Anthony v. Med. Staff at Inst.*, 409 F. Supp. 3d 102, 105 (E.D.N.Y. 2016) ("A private hospital is generally not considered a state ... actor.") (collecting cases); *Schneiderman v. N. Shore Univ. Hosp.*, No. 13-CV-5939, 2013 WL 6564184, at \*2 (E.D.N.Y. Dec.

11, 2013) ("North Shore University Hospital is a private hospital facility.") [5]; *Brown v. Chase Bank*, No. 13-CV-5309 (WFK) (LB), 2013 WL 5537302, at \*2 (E.D.N.Y. Oct. 7, 2013) (dismissing complaint against private corporations, including banks, and private individuals who "do not act under color of state law within the meaning of 42 U.S.C. § 1983"); *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) (summary order) ("[P]rivate actors and institutions, such as the hospitals, ... named as defendants in [the plaintiff]'s original complaint, are generally not proper § 1983 defendants because they do not act under color of state law." (citing *Sullivan*, 526 U.S. at 49–50)).

5    North Shore is part of the Northwell Health system and is the teaching hospital for the Donald and Barbara Zucker School of Medicine at Hofstra/Northwell. *See* About Us, https://nsuh.northwell.edu/about (last visited July 27, 2021).

Furthermore, Plaintiff does not provide any facts to support his conclusory allegations of discrimination by these Defendants. A complaint that offers nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or that "tenders naked assertions devoid of further factual enhancement" is insufficient. *Iqbal*, 556 U.S. at 678 (alteration, internal quotation marks, and citations omitted). Accordingly, even on a liberal reading, these 13 Complaints must also be dismissed for failing to state a claim.

In addition, Plaintiff's medical malpractice claim against North Shore fails because the Court does not have jurisdiction over this state law claim. "A claim sounds in medical malpractice when the challenged conduct 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician.' " *Sha v. Mem'l Sloan-Kettering Cancer Ctr.*, No. 99-CV-3233 (AKH), 2000 WL 1760883, at \*1 (S.D.N.Y. Nov. 30, 2000) (quoting *Weiner v. Lenox Hill Hospital*, 673 N.E.2d 914 (1996)), *aff'd sub nom. Sha (Engelhardt) v. Mem'l Sloan Kettering Cancer Ctr.*, 29 F. App'x 788 (2d Cir. 2002). Plaintiff's Complaint against North Shore relates to medical treatment provided to him and therefore can be read as a claim for medical malpractice. Medical malpractice claims "arise under state law, and a federal court generally will not have original jurisdiction over the[se] claims unless complete diversity exists," meaning "no plaintiff and no defendant are citizens of the same state." *Urena v. Wolfson*, No. 09-CV-1107 (KAM) (LB), 2010 WL 5057208, at \*13 (E.D.N.Y. Dec. 6, 2010). Here, Plaintiff and

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 41 of 70
Joseph v. JRF Income Tax Business Services, Not Reported in Fed. Supp. (2021)
2021 WL 3516421

North Shore are both citizens of New York; thus complete diversity and diversity jurisdiction do not exist. *See* 28 U.S.C. § 1332.

Finally, Plaintiff's actions against the Social Security Office, IRS, Great Neck, and NYSIF must be dismissed because allegations that Plaintiff was treated poorly, disrespected, or received bad customer service simply do not rise to the level of federal constitutional or statutory violations. Furthermore, Plaintiff does not provide any facts to support his conclusory allegations of discrimination by these Defendants. As previously stated, a complaint that offers nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or that "tenders naked assertions devoid of further factual enhancement" is insufficient. *Iqbal*, 556 U.S. at 678 (alteration, internal quotation marks, and citations omitted). Accordingly, even on a liberal reading, these Complaints must be dismissed for failing to state a claim upon which relief can be granted.

## II. Denial of Leave to Amend

 **\*6** The Court has a duty to give a *pro se* plaintiff the opportunity to amend his complaint if a "liberal reading of the complaint 'gives any indication that a valid claim might be stated[.]' " *Nelson-Charles*, 2019 WL 1675999, at \*2 (quoting *Cuoco*, 222 F.3d at 112). However, where it would be futile to do so because the claims are fundamentally invalid, the Court may deny the plaintiff this opportunity. *See Cuoco*, 222 F.3d at 112 ("The problem with [the plaintiff]'s causes of action is substantive; better pleading will not cure it. Repleading would thus be futile."); *accord Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order). The Court finds that it would be futile to allow Plaintiff to re-plead the claims asserted in these 13 actions, and therefore declines to grant him the opportunity to file amended complaints in any of these actions.

## III. Filing Injunction

The federal courts have limited resources. Frequent frivolous filings diminish the ability of the federal courts to manage their dockets for the efficient administration of justice. "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (internal quotation marks and citations omitted).

In light of Plaintiff's litigation history, which includes, to date, the filing of over 33 complaints, all but one of which have been dismissed *sua sponte*, he is ORDERED TO SHOW CAUSE by written Affirmation, **within 14 days** of the entry of this Order, why he should not be barred from filing any future IFP actions in the United States District Court for the Eastern District of New York without first obtaining permission from the Court to do so.

If Plaintiff fails to show cause **within 14 days** of the entry of this Order, or should Plaintiff's affirmation fail to set forth good cause why an injunction should not be entered, Plaintiff will be barred from filing any further IFP actions in this Court without first obtaining permission from the Court. *See Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing 'vexatious, harassing or duplicative lawsuits,' courts may impose sanctions, including restrictions on future access to the judicial system." (citation omitted)); *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) ("With respect to civil litigation, courts have recognized that the normal opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints.").

## CONCLUSION

The Complaints filed in the above-captioned 13 cases are dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff is ORDERED TO SHOW CAUSE by written Affirmation, **within 14 days** of the entry of this Order, why he should not be barred from filing any further *in forma pauperis* actions in this Court without first obtaining permission from the Court to do so. Plaintiff is directed to file only one Affirmation in response to the Court's order to show cause and should reference the following case number on the face of the Affirmation: 21-CV-3869.

All further proceedings shall be stayed until Plaintiff's time to file his written Affirmation has expired.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore IFP status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 42 of 70

Joseph v. JRF Income Tax Business Services, Not Reported in Fed. Supp. (2021)

2021 WL 3516421

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3516421

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1641587

2024 WL 1641587
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Howard GRIFFITH, Plaintiff,

v.

NEW YORK STATE, Attorney General, Defendant.

5:23-CV-1266 (DNH/ML)
|
Signed March 20, 2024

**Attorneys and Law Firms**

HOWARD GRIFFITH, Plaintiff, Pro Se, 2903 James Street, #1R, Syracuse, New York 13206.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**I. INTRODUCTION**

 **\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* (Dkt. No. 2) filed by Howard Griffith ("Plaintiff") to the Court for review. For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 2) and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without leave to amend.

**II. BACKGROUND**

The Complaint is forty-four pages long and includes a series of allegations that are difficult to follow and appear to have little in common. (*See generally* Dkt. No. 1.)

More specifically, Plaintiff appears to allege that between October 2019 and July 2020 he had issues with various individuals on real property that he rented from non-party Jan Nastri in the City of Syracuse. (Dkt. No. 1 at 4-5.) Plaintiff alleges that he drafted a N.Y. C.P.L.R. Article 78 petition against Onondaga County and provided a copy of the draft petition to Jan Nastri. (*Id.* at 5-6.)

Plaintiff alleges that on September 14, 2020, he attempted to comply with his obligation to update his address with the sex offender registry but that the Syracuse Police Department would not include an apartment number with his address. (*Id.*

at 7.) Plaintiff alleges that he filed the Article 78 petition he previously drafted with the addition of three points. (*Id.*) Plaintiff alleges that on October 30, 2020, New York State Judge McClusky rejected Plaintiff's request for poor person status. (Dkt. No. 1 at 9.)

The Complaint refers to an action that Plaintiff previously commenced in this Court, *Griffith v. New York*, 5:20-CV-1312 (GLS/ML) ("*Griffith I*"), which was dismissed. (Dkt. No. 1 at 11.)

The Complaint alleges that on November 3, 2020, Plaintiff contacted then-Congressman Katko to lodge a complaint about his "false address demonstrated with his sex offender registry which provided the remedy to obtain mail-in ballots." (*Id.* at 12.) Plaintiff alleges that in response to his correspondence, then-Congressman Katko sued the Onondaga County Board of Elections. (*Id.*)

The Complaint alleges that on January 10, 2002, Plaintiff was convicted of Rape in the first degree pursuant to N.Y. Penal Law § 130.35(1). (Dkt. No. 1 at 13.) The Complaint alleges that as a result of that conviction, Plaintiff was deemed a Level III sex offender pursuant to N.Y. Correct. Law § 168. (*Id.*) Plaintiff alleges that he sought (1) to vacate his judgment of conviction, (2) modification of his sex offender registry obligations, and (3) habeas corpus relief. (*Id.* at 13-19.)

Plaintiff alleges that on March 9, 2021, he responded to a reward notification posted by the Federal Bureau of Investigation with information about individuals producing pipe bombs and explosive devices used on January 6, 2021, in Washington DC. (Dkt. No. 1 at 19.) The Complaint alleges that Plaintiff discovered evidence in the dumpster where he disposes of trash and referred the evidence to the Onondaga County District Attorney's office. (*Id.* at 19-20.)

The Complaint alleges that on June 8, 2021, Plaintiff was incarcerated for failure to register as a sex offender pursuant to N.Y. Correct. Law § 168-f(3). (Dkt. No. 1 at 22.) The Complaint alleges that Plaintiff was incarcerated "because the police needed a reason to place [Plaintiff] in jail for a psychiatric evaluation ... after he had recovered from a grand-mal seizure." (*Id.*)

 **\*2** The Complaint alleges that Plaintiff sought a modification to his SORA level, which apparently was denied because, the Complaint alleges that had the modification been granted, he would have only been required to register once

2024 WL 1641587

per year. (Dkt. No. 1 at 23.) Plaintiff alleges that he was denied access to the law library while incarcerated at the Onondaga County Justice Center because he was not given the inmate handbook. (*Id.*) Plaintiff alleges that he was placed in segregated housing because he struck a deputy who refused to authorize him use of the law library. (*Id.*) Plaintiff alleges that he was unable to exhaust his administrative remedies with respect to the associated disciplinary hearing because he was transferred to the Central New York Psychiatric Center ("CNYPC"). (*Id.*)

The Complaint alleges that Plaintiff was released from custody on bail on October 18, 2021. (Dkt. No. 1 at 27.) The Complaint alleges that after Plaintiff was released, "he obtained a medicare voucher at his mailbox for the person identified on the flier that he filed with 'Howard Griffith v. Onondaga County, [ ]'. The medicare voucher was addressed to the fake address he attempted to demonstrate with his sex offender registry.... Plaintiff demonstrated how New York citizens had just voted against proposals that would ease restrictions on voting laws with regards to redistricting, mail-in ballots and same day voter registration." (*Id.*)

The Complaint alleges that on February 18, 2022, Plaintiff was convicted of failing to fulfill his duty to register as a sex offender pursuant to N.Y. Corr. Law § 168-f(3). (Dkt. No. 1 at 30.) The Complaint alleges that on March 7, 2022, Plaintiff was arrested and charged with harassment in the second degree for striking his roommate, Rebecca Sklaney. (*Id.* at 31.)

The Complaint does not appear to assert any causes of action, but states that it is "brought pursuant to 42 USC § 1983, to remedy the deprivation, under color of state law, of the rights guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution." (Dkt. No. 1 at 2.) As relief, the Complaint seeks, *inter alia,* (1) reconsideration of *Griffith I,* (2) a declaration that mail-in voting ballots be eliminated from elections, and (3) an investigation "into whether any person or entity has engaged in ... fraudulent, illegal or deceptive conduct in the ownership, operation or management of the residential properties owned, operated and/or managed by Jan Nastri." (Dkt. No. 1 at 43-44.)

## III. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however,

to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [1] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [2]

[1]    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States,* 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.,* 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[2]    Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.,* 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 45 of 70

Griffith v. New York State, Not Reported in Fed. Supp. (2024)

2024 WL 1641587

theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## V. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Plaintiff's Complaint is largely incomprehensible and must be dismissed for two reasons.

### A. Frivolous

First, Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A pleading must also contain "a demand for the relief sought[.]" *Id.* "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id*. Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at \*2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 46 of 70

Griffith v. New York State, Not Reported in Fed. Supp. (2024)
2024 WL 1641587

As it currently stands, Plaintiff's Complaint wholly fails to provide fair notice of the claims he attempts to assert. Although the Complaint begins using numbered paragraphs on pages 1 and 2, the remaining forty-two pages of the Complaint are unnumbered paragraphs. (*See generally* Dkt. No. 1.) Moreover, the Complaint is extremely difficult to follow and, as mentioned above, alleges a series of grievances that appear to have little to do with one another. As best as the undersigned can decipher, Plaintiff appears to believe that his arrest—and ultimate conviction—for failing to comply with his duty to register as a sex offender is somehow related to voting regulations in New York State. (*Id.*) Given its lack of clarity, the undersigned recommends dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claim or claims against Defendant are entirely unclear.

### B. Immunity

**\*5** Second, and in the alternative, I recommend that Plaintiff's Complaint be dismissed because it seeks relief from New York State, which is immune from suit.

The Eleventh Amendment bars individuals from suing states in federal court, unless Congress abrogates states' immunity or a state consents to suit. *See* U.S. Const. Amend. XI; *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). Eleventh Amendment immunity in this case extends to arms of New York State, including the New York State Attorney General. *See Smith v. United States*, 554 F. App'x 30, 31 (2d Cir. 2013) (affirming dismissal of claims against the New York State Attorney General on sovereign immunity grounds). Accordingly, I recommend that Plaintiff's claims asserted against the New York State Attorney General be dismissed pursuant to Section 1915(e)(2)(B)(i).

### VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a

plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [3]

[3]　　*See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above. [4] *See Roark v. New York*, 23-CV-1237, 2023 WL 8827185, at \*6 (N.D.N.Y. Dec. 21, 2023) (Lovric, M.J.) (recommending dismissal without leave to amend the plaintiff's claims against the People of the State of New York and the Watertown District Attorney's Office because those governmental entities were immune from suit), *report and recommendation adopted*, 2024 WL 125512 (N.D.N.Y. Jan. 11, 2024) (Hurd, J.).

[4]　　The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction. *Crumble v. United States*, 23-CV-4427, 2023 WL 5102907, at \*7 (S.D.N.Y. Aug. 7, 2023); *Nguyen v. Kijakazi*, 20-CV-0607, 2022 WL 542265, at \*8 (E.D.N.Y. Feb. 23, 2022). Moreover, the Second Circuit has directed that dismissals for lack of subject matter jurisdiction are to be made without prejudice. *Abadi v. City of New York*, 22-CV-1560, 2023 WL 3295949, at \*3 n.3 (2d Cir. May 8, 2023) (summary order) (citing *Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction.")) ("Because the Court

2024 WL 1641587

lacks subject matter jurisdiction ... the amended complaint should be dismissed *without* prejudice.") (emphasis in original).

**\*6**  **ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) for frivolousness and because Defendant is immune from suit, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [5]  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[5]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1641587

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Griffith v. New York State Attorney General, Not Reported in Fed. Supp. (2024)

2024 WL 1639856

2024 WL 1639856
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Howard GRIFFITH, Plaintiff,
v.
NEW YORK STATE ATTORNEY
GENERAL, Defendant.

5:23-CV-1266
|
Signed April 16, 2024

**Attorneys and Law Firms**

HOWARD GRIFFITH, Plaintiff, Pro Se, 2903 James Street, #1R, Syracuse, NY 13206.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

**\*1** On October 10, 2023, *pro se* plaintiff Howard Griffith ("plaintiff") filed this civil action alleging that defendant somehow violated his rights in connection with a real property rental dispute with non-parties. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On March 20, 2024, U.S. Magistrate Judge Miroslav Lovric granted plaintiff's IFP Application, conducted an initial review of the pleading, and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed without prejudice but without leave to amend. Dkt. No. 7. As Judge Lovric explained, plaintiff's pleading was frivolous. *Id.*

Plaintiff has lodged objections. Dkt. No. 8. Upon *de novo* review, the R&R is accepted and will be adopted. 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 7) is ACCEPTED;

2. Plaintiff's complaint is DISMISSED without prejudice but without leave to amend.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1639856

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4052286
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Sylvia JENKINS, Plaintiff,

v.

Mr. LIADKA, Syracuse Police Officer; Mr. Sands,
Syracuse Police Officer; John Doe, Syracuse Police
Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).
|
Sept. 13, 2012.

**Attorneys and Law Firms**

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for
City of Syracuse, Catherine Ena Carnrike, Esq., Assistant
Corporation Counsel, of Counsel, Syracuse, NY, for
Defendants.

*MEMORANDUM–DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Sylvia Jenkins ("Plaintiff") against Mr. Liadka,
Mr. Sands, John Doe, and Syracuse Police Department
("Defendants"), is Defendants' motion to dismiss Plaintiff's
Complaint for insufficient service of process pursuant to
Fed.R.Civ.P. 12(b)(5) and/or for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 13.) For the
reasons set forth below, Defendants' motion is granted in part
and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, construed with the utmost of special liberality,
Plaintiff's Complaint asserts three claims against Defendants
arising from an investigatory stop in September 2010, in
Syracuse, New York: (1) a claim that three Syracuse Police
Officers unreasonably searched her in violation of the Fourth
Amendment; (2) a claim that they unlawfully seized, and
failed to return, her personal property in violation of the

Fourth, Fifth, and/or Fourteenth Amendments; and (3) a claim
that they subjected her to excessive force in violation of
the Fourth Amendment. (*See generally* Dkt. No. 1 [Plf.'s
Compl].)

Generally, in support of these claims, Plaintiff alleges as
follows: (1) on the evening of September 9, 2010, she was
stopped on Butternut Street in the City of Syracuse by
two officers, who questioned her regarding a call they had
received; (2) when she told the two police officers that she
did not know what they were talking about and "attempted
to go on about [her] business," the officers became "uptight,
rude, [and] abnormal in their conversations [and] behavior,"
and threatened her; (3) the officers then proceeded to conduct
a search of "all [of Plaintiff and her] personal property,"
and, in the process of doing so, twisted her arm and forced
her onto the front of their police vehicle; (4) a third police
officer arrived, and she was assaulted by all three officers
(hereinafter "Defendants"), who hit her on the back and threw
her onto the police vehicle; (5) following the deprivation on
September 9, 2010, Defendants denied her a post-deprivation
remedy through a combination of threats, intimidation and/
or nonresponsiveness; and (6) Defendants took these actions
against her intentionally because they did not personally like
her, given her previous interactions with the Syracuse Police
Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident,
she suffered various injuries and losses, including (1) a
"tremendous setback in already trying to recover in an [sic]
grave overall manner of my life [and] lifestyle involving
officials internally [and] externally," (2) head and back pain,
and mental suffering, (3) loss of personal property, and, (4)
loss of employment. (*Id.*) As relief, Plaintiff requests an award
of twelve thousand dollars ($12,000) in damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations supporting
Plaintiff's three claims is assumed in this Decision and Order,
which is intended primarily for review by the parties. (*See
generally* Dkt. No. 1.)

### B. Defendants' Motion

**\*2** On May 6, 2011, Defendants filed a motion to dismiss.
(Dkt. No. 13, Attach 2.) Generally, in support of their motion,
Defendants assert the following two arguments: (1) because
the Complaint was not served within the time allowed by
Fed.R.Civ.P. 4 or Local Rule 4.1 of the Local Rules of Practice
for this Court, the Court lacks jurisdiction over Defendants in
accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails

2012 WL 4052286

to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the responsedeadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are treating her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and

affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

**\*3** Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading

contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [1]

[1]    It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and

citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

[2]     See *Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N . Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[3]     See *Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

**\*5** Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties),

(3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at \*5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at \*5.

**C. Legal Standard Governing Unopposed Motions**

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at \*1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at \*2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

**D. Legal Standards Governing Plaintiff's Claims**

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)

**E. Legal Standards Governing Defendants' Defenses**

**1. Defense of Lack of Separate Identity**

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of

2012 WL 4052286

a police department to sue or be sued. In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

### 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior.*"[4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy ."[5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[6]

[4]   *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior." ).*

[5]   *Powell,* 2005 WL 3244193, at *5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under §

1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[6]   *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...."[7] With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation).[8]

[7]   *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133–134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

[8]   *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional

deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell'* s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell,* 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

### 3. Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d

Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*7** *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).[9] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted].[10] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).[11] As the Supreme Court has explained,

[9] *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

[10] *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)

("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

11    *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341.[12]

12    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

## III. ANALYSIS

### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her

Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive to the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8** After carefully considering the matter, the Court must answer this question also in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth

Amendments; and (3) a claim of excessive force under the Fourth Amendment.

### 2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part III.C. of this Decision and Order. [13] Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property. *See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist. LEXIS 44658, at *29, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege ... the personal involvement of the Defendant in the actions underlying their claim."). [14]

[13]    Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion. For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York. (Dkt. No. 4.) In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments. (Dkt. No. 15.) Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to the motion in question. *See, infra,* Part III.D. of this Decision and Order.

[14]    Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been identified. In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.) Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

### 3. Whether the Syracuse Police Department Should Be Dismissed as a Defendant

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach 2, at 13.) The Court would add only the following three brief points.

**\*9** First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, "as Plaintiff has been told several times, under New York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,* 12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan,* 07–CV–0667, 2012 WL 1129373, at *24 [S.D.N.Y. March 30, 2012] ). Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

### 4. Whether, Even if the City of Syracuse Were Substituted for the Police Department, Plaintiff's Claims Against the City Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 14–15 [attaching pages "13" and "14" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department,[15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries. *Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

[15]   In addition to not alleging facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

**\*10**  For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

### 5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d. Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized,

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 58 of 70
Jenkins v. Liadka, Not Reported in F.Supp.2d (2012)
2012 WL 4052286

he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina, 525 U.S. at 241.* Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

### 6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive

**\*11** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became

necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

[16]    More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[17]    More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at *27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

**7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

**\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

**C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action**

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that

granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at \*1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint will be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case. [18] Of the seven times an amended complaint was required, Plaintiff submitted an amended complaint only three times. [19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint. [20] Plaintiff did not comply with the Court's order

2012 WL 4052286

to amend her complaint at all on four occasions.[21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile.[22]

18      *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012).

19      *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007).

20      *Id.*

21      *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

22      *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's*

*Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti–Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone-twelve of which have been dismissed and the thirteen of which is being considered for dismissal.[23] A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

23      *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan.17, 2006); *Jenkins v. City*

*of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute.[24]

[24]    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins*

*v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times.[25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, on October 6, 2006, she was specifically informed of the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department.[26]

[25]    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

[26]    *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket

Jenkins v. Lladka, Not Reported in F.Supp.2d (2012)
2012 WL 4052286

so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at * 1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti–Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is *GRANTED* **in part** and *DENIED* **in part;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally *DISMISSED;* and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of* 28 U.S.C. § 1915(a) (3), *that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4052286

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 63 of 70
Calley v. Town of Cortlandt, Not Reported in Fed. Supp. (2019)
2019 WL 11880434

2019 WL 11880434
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Wayne CALLEY; Jared Wayne Calley, Plaintiffs,

v.

TOWN OF CORTLANDT; Linda D. Puglisi, Town of
Cortlandt Supervisor; Town of Cortlandt Court Clerk
Audrey Stewart; Westchester County Police Department;
Westchester County Police Officer Coffee, Defendants.

19-CV-5453 (CM)
|
Signed 07/08/2019

**Attorneys and Law Firms**

Wayne Calley, Verplank, NY, Pro Se.

Jared Wayne Calley, Verplank, NY, Pro Se.

## ORDER TO AMEND

COLLEEN McMAHON, Chief United States District Judge:

**\*1** Plaintiffs, appearing *pro se*, bring this action alleging
that defendants violated their rights in connection with their
eviction from 17 Riverview Avenue in Verplank, New York.
By order dated June 14, 2019, the Court granted Plaintiffs'
requests to proceed without prepayment of fees, that is, *in
forma pauperis.*

## STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or
portion thereof, that is frivolous or malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief. 28 U.S.C.
§ 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.,*
141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss
a complaint when the Court lacks subject matter jurisdiction.
*See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal
on any of these grounds, the Court is obliged to construe *pro
se* pleadings liberally, *Harris v. Mills,* 572 F.3d 66, 72 (2d
Cir. 2009), and interpret them to raise the "strongest [claims]
that they *suggest,*" *Triestman v. Fed. Bureau of Prisons,* 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and
citations omitted) (emphasis in original).

## BACKGROUND

Plaintiffs Wayne Calley and his adult son, Jared Calley, make
the following allegations. Beginning in May or June 2005,
they occupied 17 River View Avenue in Verplank, New York.
They obtained "squatter's rights" to the land through adverse
possession. On March 20, 2017, and April 20, 2017, they
submitted a petition regarding their adverse possession claim
to the Clerk of the Town of Cortlandt, who accepted and date-
stamped these documents. No proceedings were held based
on those petitions.

Town Supervisor Linda D. Puglisi and the Town of Cortlandt
committed fraud by "manufacturing falsified deeds of
ownership," using a tax identification number for neighboring
property owened by Viking Boat Yard. [1] The Town of
Cortlandt, acting "without notice or due process," obtained a
judgment against Wayne Calley for $2,844.60 for water bills
dating back to March 1, 2017.

[1]   It is unclear from Plaintiffs' allegations whether the
       alleged fraud took place in court proceedings or
       what representations were made.

On September 20, 2018, the Town of Cortlandt evicted
Plaintiffs. One or more defendants entered the premises while
Plaintiffs were absent and "remov[ed] property, removed
property fences, damage[ed] water pipes, ripp[ed] down
cable and phone lines." They also "used the Westchester
County Police to threaten and intimidate[e]" Plaintiffs. This
resulted in "loss of property rights, loss of property, property
damages, and displacement." The Town Court Clerk Audrey
Stewart "effectively denied [plaintiffs] meaningful access to
the court."

Plaintiffs allege that this has caused them extreme hardship,
and they seek damages. They name as Defendants in this
action the Town of Cortlandt, Town of Cortlandt Supervisor
Linda Puglisi, Town of Courtland Court Clerk Audrey
Stewart, and the Westchester County Police Department.
They also name Westchester County Police Officer Coffee as
a defendant in the caption of the complaint, but do not mention
him in the body of the complaint.

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 64 of 70
Calley v. Town of Cortlandt, Not Reported in Fed. Supp. (2019)
2019 WL 11880434

**\*2**  Plaintiff Wayne Calley had a prior action in this Court relating to the same trailer park in Verplank, New York. In 2016, Wayne Calley removed to this Court under 28 U.S.C. § 1141 an action that the Town of Cortlandt had filed against him in the Town of Cortlandt Justice Court in connection with his residence at Riverview Avenue in a trailer park in Verplank, New York. *New York. Town of Cortlandt v. Calley*, No. 16-CV-9675 (GBD) (S.D.N.Y. Dec. 15, 2016). [2] According to documents filed in that action, the trailer park owner, James Martin, deeded the property to the Town of Cortlandt, but this was to be effective ten years after his death. [3] Although the allegations are not entirely clear, Calley appeared to indicate in that action that he sublet the residence from someone else. He attached to his complaint in the 2016 action a January 31, 2014 letter notifying residents of the mobile home park that they could "remain in their mobile homes until July 2016," and urging them to begin planning for relocation. *Calley*, No. 16-CV-9675 (Compl. at 27). He further alleged that on November 15, 2016, he "was served a Notice to Quit." That action was remanded to state court.

[2]    It is unclear whether this action involved the same parcel because that action mentioned 19 Riverview Avenue, *Calley*, No. 16-CV-9675 (GBD) (S.D.N.Y.) (Notice of Removal at 26), and this suit refers to 17 Riverview Avenue (Compl. at 1).

[3]    Several other residents of the Verplank trailer park filed suits. *See, e.g., Riveredge Owners' Association et al. v. Town of Cortlandt, Inc.*, No. 16-CV-5665 (GBD)(JLC); *see also LaForgia et al. v. Vergano, P.E.*, No. 15-CV-08589 (KMK) ("Martin's property became encumbered to the Town of Cortland for property tax arrearages of roughly $45,000. To discharge these tax arrearages, Martin deeded the property to the Town of Cortland but retained an interest in the property and noted in the deed that 'for ten (10) years after [Martin's] death the residents at Riveredge would be permitted to retain their rights of use and quiet enjoyment upon the property.' Martin ... passed away on July 3, 2006.").

## DISCUSSION

### A. Personal Involvement

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Plaintiffs name Westchester County Police Officer Coffee as a defendant in the caption of the complaint but fail to plead any facts in the body of the complaint about what Defendant Coffee allegedly did or failed to do that violated his rights. Plaintiffs thus fail to state a claim against Defendant Coffee.

Plaintiffs' allegations that the Town of Cortlandt "used the Westchester County Police to threaten and intimidate[e]" them during the "demolition" of their property, without more facts, also do not state a claim under § 1983 on which relief can be granted against Police Officer Coffee or the Town of Cortlandt. *See, e.g., Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, 'unaccompanied by any injury, no matter how inappropriate, unprofessional or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.").

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects unless it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Although it seems unlikely from the allegations of the complaint that Plaintiffs can state a claim against Defendant Coffee, because it is not clear that granting leave to amend would be futile, the Court grants Plaintiffs leave to amend his complaint to replead his claims against this defendant. If Plaintiffs file an amended complaint and name Police Officer Coffee as a defendant, they must include facts in the amended complaint about what he personally did or failed to do that violated their rights.

### B. Westchester County Police Department

**\*3**  Plaintiffs' claims against the Westchester County Police Department must be dismissed. Under New York law, municipal agencies or departments do not have the capacity to be sued. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 65 of 70
Calley v. Town of Cortland, Not Reported in Fed. Supp. (2019)
2019 WL 11880434

sue or be sued."); *see also* N.Y. Gen. Mun. Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village.").

Moreover, Plaintiffs do not make out any claim against the County of Westchester. When a plaintiff sues a municipality under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011).

In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted). Plaintiffs do not allege in their complaint that any custom, policy, or practice of the County of Westchester caused a violation of their rights.

If Plaintiffs choose to file an amended complaint and replead their claims against the County of Westchester, they must include facts showing how a custom, policy, or practice of the County of Westchester caused a violation of their rights.

## C. Procedural Due Process

"The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest ... and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir. 1995) (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428 (1982)). Where the government deprives a plaintiff of a protected interest pursuant to an established procedure, [4] due process generally requires some form of hearing before the government finally deprives the individual of the property interest. *Nnebe v. Daus,* 644 F.3d 147, 158 (2d Cir. 2011).

[4]   Conduct is undertaken in accordance with established state procedures when, for example, it is "pursuant to a statute, code, regulation, or custom" or is the result of a decision made by a high-ranking official with "final authority over significant matters," *see Viteritti v. Inc. Vill. of Bayville,* 918 F. Supp. 2d 126, 134 (E.D.N.Y. 2013) (citing *Chase Grp. Alliance LLC v. City of New York Dep't of Fin.,* 620 F.3d 146, 152 n.3 (2d Cir. 2010)).

By contrast, a government agent's random and unauthorized act does not violate due process if a meaningful post-deprivation remedy is available; when the government cannot predict precisely when the loss will occur, it would be impossible to provide a meaningful hearing *before* the deprivation. *See Hudson v. Palmer,* 468 U.S. 517, 533 (1986); *Parratt v. Taylor,* 451 U.S. 527, 540-43 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327, 220-31 (1986); *see also Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 882 (2d Cir. 1996) ("[T]here *is no* constitutional violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty.").

**\*4** Here, Plaintiffs allege that they submitted petitions to the Town Clerk in 2017, seeking to establish that they owned their residence in Verplank under adverse possession laws. Despite their submission of a petition, "no proceedings ever took place" (Compl. at 1), and they appear to assert a procedural due process claim on this basis. Plaintiffs do not indicate why they filed such a document with the clerk rather than filing an action in state court, and the Court is unaware of any state procedure that would allow them to establish their property rights by submitting a petition to the Town Clerk.

Plaintiffs had the option of bringing a quiet title action in state court to establish their alleged right to adverse possession. [5] In the alternative, if the Town of Cortland brought an action in state court to eject Plaintiffs from the premises, as it appears from the pleadings in *Town of Cortland v. Calley,* No. 16-CV-9675 (GBD) (S.D.N.Y.), that the Town of Cortland may have done, Plaintiffs could have raised their claim of adverse possession as a defense in the eviction or ejection proceedings. [6] Plaintiffs make no allegation that the procedures available to them under state law were inadequate. The fact that they submitted a petition to the "Clerk of the Town of Cortland," that failed to trigger any proceedings,

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 66 of 70

Calley v. Town of Cortlandt, Not Reported in Fed. Supp. (2019)

2019 WL 11880434

does not state a claim for a violation of their rights to procedural due process. Moreover, the failure to use available state procedures, such as a quiet title action, appears to preclude a claim for the denial of due process as to their real property rights. [7]

[5]     Under New York law, to establish a claim of title to real property by adverse possession, a party must demonstrate, by clear and convincing evidence, that the possession was (1) hostile and under claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the statutory period of 10 years. *See Estate of Becker v. Murtagh*, 19 N.Y.3d 75, 81 (2012).

[6]     If the state court has already adjudicated whether Plaintiffs had any possessory interest in the property, the Court cannot review that determination because federal district courts lack authority to review or overturn state court decisions.

[7]     Even an initial review of the adverse possession claim suggests that under New York law, this claim cannot succeed. For example, N.Y. R.P.A.P.L. § 531 provides that "[w]here the relation of landlord and tenant has existed, the possession of the tenant is deemed the possession of the landlord until the expiration of ten years after the termination of the tenancy; or, where there has been no written lease, until the expiration of ten years after the last payment of rent." Therefore, if parties "occupied the premises as tenants without a written lease, [this] would raise a presumption of nonadversity for 10 years from the last payment of rent ..., and require that a minimum period of 20 years elapse from the last payment of rent for their occupancy to ripen into adverse possession. *Hogan v. Kelly*, 86 A.D.3d 590, 593 (App. Div. 2d Dep't 2011).

Plaintiffs do allege that Court Clerk Audrey Stewart has "effectively denied [plaintiffs] meaningful access to the court." (Compl. at 2.) Plaintiffs may be alleging that they were prevented in some way from vindicating their rights. Plaintiffs' allegations, however, do not include any facts about what occurred and therefore fail to state a claim on which relief can be granted for denial of the right to procedural due process. As set forth below, Plaintiffs likely cannot pursue a claim for damages against Stewart. But because Plaintiffs may be suggesting that they were prevented from vindicating their rights in connection with the destruction of their personal or real property, the Court grants Plaintiffs leave to replead their claims. If Plaintiffs file an amended complaint repleading their claims, they must include facts about what happened that rendered inadequate the remedies available to them under state law.

**D. Court Clerk Audrey Stewart**

**\*5** Judges are absolutely immune from suit for damages for acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Judicial immunity has been extended to court clerks and "others who perform functions closely associated with the judicial process" when they are performing discretionary acts of a judicial nature which are essential to the judicial process, especially the filing of court documents and managing a court's calendar. *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *see Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to state court clerks who were ordered by Appellate Division judges not to provide a litigant with documents and not to expand the record on appeal); *Pikulin v. Gonzales*, No. 07-CV-0412 (CBA), 2007 WL 1063353, at \*2 (E.D.N. Y Apr. 5, 2007) (extending judicial immunity to the federal court clerk with respect to claims arising out of the filing and docketing of legal documents).

While some courts have held that "Clerk's Office activities of filing and docketing legal documents" are an "integral part of the judicial process" and are entitled to absolute immunity, *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010) *aff'd*, 434 F. App'x 32 (2d Cir. 2011), others have noted that "[t]he refusal of a clerk of a court to accept the papers of a litigant seeking to commence an action under a state statute may deprive that litigant of federal constitutional rights," *Humphrey v. Court Clerk for the Second Circuit*, No. 08-CV-0363 (DNH), 2008 WL 1945308, at \*2 (N.D.N.Y. May 1, 2008) (relying on *LeGrand v. Evan*, 702 F.2d 415, 418 (2d Cir. 1983) (reversing decision dismissing as frivolous complaint that alleged that clerk of the New York Supreme Court, Kings County, refused to accept applications for a writ of *habeas corpus*, and noting that "many courts have accorded clerks

only a qualified 'good faith' immunity from liability arising from ministerial acts.")).

Here, Plaintiffs allege that court clerk Audrey Stewart has "effectively denied [plaintiffs] meaningful access to the court." (Compl. at 2.) These allegations fail to state a claim on which relief can be granted because Plaintiffs do not plead any facts about what Defendant Stewart did or failed to do that violated their rights. Plaintiffs' claims against Audrey Stewart are therefore dismissed for failure to state a claim on which relief can be granted, without prejudice to repleading. 28 U.S.C. § 1915(e)(2)(B)(ii).

### E. Town Supervisor Linda Puglisi

Plaintiffs allege that Town Supervisor Linda Puglisi engaged in "fraudulent concealment of public title information" and manufactured "falsified deeds of ownership." (Compl. at 2.) As with several of Plaintiffs' other claims, Plaintiffs have not alleged facts about what happened or what Defendant Puglisi allegedly did or failed to do. Plaintiffs state that the Town Supervisor used a tax identification number for a different property, but these allegations are insufficient to explain what occurred. It is unclear, for example, if they contend that misrepresentations were made in court proceedings or in some other context. Plaintiffs thus fail to state a claim on which relief can be granted against Town Supervisor Puglisi.

### LEAVE TO AMEND

**\*6** Plaintiffs are granted leave to amend their complaint to detail their claims. First, Plaintiffs must name as the defendant(s) in the caption [8] and in the statement of claim those individuals who were allegedly involved in the deprivation of their federal rights. If Plaintiffs do not know the name of a defendant, they may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint. [9] In the statement of claim, Plaintiffs must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiffs are also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiffs' amended complaint must:

a) give the names and titles of all relevant persons;

b) describe all relevant events, stating the facts that support Plaintiffs' case including what each defendant did or failed to do;

c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) give the location where each relevant event occurred;

e) describe how each defendant's acts or omissions violated Plaintiffs' rights and describe the injuries Plaintiffs suffered; and

f) state what relief Plaintiffs seek from the Court, such as money damages, injunctive relief, or declaratory relief.

[8] The caption is located on the front page of the complaint. Each individual defendant must be named in the caption and also be discussed in Plaintiffs' statement of claim.

[9] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2010, at Sullivan Correctional Facility, during the 7-3 p.m. shift." The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiffs shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending their complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiffs seek to add a new claim or party after the statute of limitations period has expired, they must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

Essentially, the body of Plaintiffs' amended complaint must tell the Court: who violated their federally protected rights; what facts show that their federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiffs are entitled to relief. Because Plaintiffs' amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiffs wish to maintain must be included in the amended complaint.

Calley v. Town of Cortlandt, Not Reported in Fed. Supp. (2019)

2019 WL 11880434

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiffs, and note service on the docket. Plaintiffs are granted leave to file an amended complaint that complies with the standards set forth above. Plaintiffs must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 19-CV-5453 (CM). No summons will issue at this time. If Plaintiffs fail to comply within the time allowed, and they cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

**\*7** SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____          _____CV_____
                                         (include case number if one has been
Write the full name of each plaintiff.    assigned)

                                              AMENDED

        -against-
                                              COMPLAINT

_____          Do you want a jury trial?
                                              ☐ Yes    ☐ No
_____

_____

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include only: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

Rev. 2/30/17

**Calley v. Town of Cortlandt, Not Reported in Fed. Supp. (2019)**

Case 1:25-cv-00501-ECC-TWD   Document 13   Filed 07/01/25   Page 69 of 70

2019 WL 11880434

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐  **Federal Question**

☐  **Diversity of Citizenship**

### A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

### B.  If you checked Diversity of Citizenship

1.  **Citizenship of the parties**

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
(Plaintiff's name)

_____

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| First Name | Middle Initial | Last Name | |
|---|---|---|---|

| Street Address | | | |
|---|---|---|---|

| County, City | State | | Zip Code |
|---|---|---|---|

| Telephone Number | Email Address (if available) | |
|---|---|---|

Page 3

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

Page 4

Defendant 4:

| First Name | Last Name | |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |
|---|---|---|

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

### FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Page 5

Calley v. Town of Cortlandt, Not Reported in Fed. Supp. (2019)

Case 1:25-cv-00501-ECC-TWD    Document 13    Filed 07/01/25    Page 70 of 70

2019 WL 11880434

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

Page 6

**V. PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | | Plaintiff's Signature |
| --- | --- | --- |
| First Name | Middle Initial | Last Name |
| Street Address | | |
| County, City | State | Zip Code |
| Telephone Number | | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

**All Citations**

Not Reported in Fed. Supp., 2019 WL 11880434

_____

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.